McKISSICK, by Curator, RICHARDSON, Appellant, v. CITY OF ST. LOUIS.

### Division Two, March 5, 1900.

1. **Negligence: OPENING IN STREET: NOTICE: PRESUMPTION OF KNOWL-EDGE: DEMURRER TO CASE.** A boy five and a half years old fell into an opening in a street, where people walked as they did usually upon any other thoroughfare in the city, and his curator brings suit against the city for his injuries. The opening was two feet wide and extended out into the street three feet from the wall, and underneath it was a cellar six or seven feet deep. It had a ledge raised about four inches above the street's level, and the coverings were frequently removed for the purpose of ventilation, the building being a station of the city's fire department. The hole was usually open in good weather, was seen to be open the evening before the accident on the 23d of October, and seen to be open and boys sitting on its ledge as late as ten o'clock at night between August and that time. The foreman of the house was in charge of the station at the time, and two or three months previously he had been spoken to about the hole being open. *Held*, that, these facts, if true, were sufficient to charge the city with notice that the street was not safe for pedestrians, and, as a demurrer to plaintiff's evidence admitted them to be true, that demurrer should have been overruled.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow*, Judge.

REVERSED AND REMANDED.

*J. J. McCann* and *A. R. Taylor* for appellant.

(1) There was ample evidence upon which to predicate constructive notice to the city of the pitfall in the sidewalk in question. Bonine v. Richmond, 75 Mo. 438; Maus v. Spring-

field, 101 Mo. 616; Charter of St. Louis, art. 4, sec. 35; Davenport v. Hannibal, 108 Mo. 472; Frank v. St. Louis, 110 Mo. 517; Carrington v. St. Louis, 89 Mo. 208; Welch v. St. Louis, 73 Mo. 73; Russell v. Columbia, 74 Mo. 485. (2) If there was not sufficient of such evidence to so do, it was error to reject the evidence tending in proof thereof. (3) Direct written or spoken notice to the city of the condition of the sidewalk in question was not necessary, as is manifest from the authorities, *supra*; yet it was given to the city employee in charge of the city property abutting the sidewalk in question. Charter of St. Louis, art. 11, sec. 1; Carrington v. St. Louis, 89 Mo. 208. (4) The city of St. Louis is bound to keep its streets free from obstruction and reasonably safe for travel in the usual modes and is liable for an injury by a neglect of this duty. Nor can this duty be evaded, suspended or cast upon others by any act of its own. Russell v. Columbia, 74 Mo. 490.

*B. Schnurmacher* and *Chas. Claflin Allen* for respondent.

(1) While a municipal corporation is bound to keep its streets and sidewalks in a reasonably safe condition for the use of travelers and pedestrians lawfully thereon, and exercising due care themselves, it is not chargeable with negligence for a defective condition thereof, unless sufficient time has elapsed after the proper municipal authorities had notice of the defect for them to have repaired it; or, after they ought, by reasonable diligence, to have acquired such knowledge of the defect. Dillon's Mun. Corps., secs. 1025, 1026; Tiedeman on Mun. Corps., sec. 350a; Franke v. St. Louis, 110 Mo. 516; Barr v. Kansas City, 105 Mo. 550; Maus v. Springfield, 101 Mo. 613. And such liability attaches only after notice, actual or implied, to the officers of the corporation having authority to act. Dillon's Mun. Corps., sec. 1025. (2) The city of St. Louis does not maintain its fire department for local or mere corpor-

ate advantage, but to preserve the lives and property of its citizens, in the discharge of a public function or duty.    The firemen employed by it are, therefore, not its officers in such sense as will make the city liable for their acts, however negligent.    Dillon's Mun. Corps. (4 Ed.), sec. 976; Tiedeman on Mun. Corps., secs. 333, 333a; Shearman & Redf. on Neg., sec. 265; Whittaker's Smith on Neg., p. 120n; Heller v. Sedalia, 53 Mo. 159; McKenna v. St. Louis, 6 Mo. App. 320; Frederick v. Columbus, 51 N. E. Rep. 35; Welsh v. Rutland, 56 Vt. 228; Torbush v. Norwich, 38 Conn. 225; Jewett v. New Haven, 38 Conn. 368; Greenwood v. Louisville, 13 Bush (Ky.) 226; Smith v. Rochester, 76 N. Y. 506; Grube v. St. Paul, 34 Minn. 402; Burrill v. Augusta, 78 Me. 118; Robinson v. Evansville, 87 Ind. 334.    And this is based on the same principle which exempts municipal corporations from liability for the negligent acts of any of its officers, or agents, engaged in the discharge of public or delegated duties.    Donahoe v. Kansas City, 136 Mo. 664; Murtaugh v. St. Louis, 44 Mo. 159; Ulrich v. St. Louis, 112 Mo. 136; Kiley v. City, 87 Mo. 103; Armstrong v. City, 79 Mo. 319; Keating v. City, 84 Mo. 415; Hill v. Boston, 122 Mass. 344.

BURGESS, J.—This is an action by plaintiff, a minor, by his curator, against the city of St. Louis, for ten thousand dollars damages alleged to have been sustained by him by falling into the basement of a fire engine house in said city.

The petition alleged that on the 23d day of October, 1895, the plaintiff was lawfully on the north sidewalk of Walnut street, an open public street within the city of St. Louis, when he fell into a hole, or opening, in front of an engine station, in the sidewalk of said street, maintained by the defendant in a negligent, reckless and unsafe condition, and broke his leg about three inches below the thigh, and otherwise was greatly bruised and injured upon his head and body; whereby he was made sick and sore, and was per-

manently disabled and crippled for life.   That by his injuries
so sustained the plaintiff has suffered and will suffer great
pain of body and mind; has been permanently crippled and
disabled from labor; will lose the earnings of his labor, and
will incur large expenses for medicines, medical attention
and nursing, all to his damage in the sum of ten thousand
dollars for which sum he prays judgment.

The answer was a general denial.

The place where the accident happened was upon the
sidewalk of one of the streets of the city.   This sidewalk was
of granitoid, proximately to which on one side was a fire en-
gine house and next to this building there were two openings
cut into the sidewalk, each about two and one-half feet square,
for the purpose of ventilating the basement or cellar, one at the
east and the other at the west side of a passage way in the
building, which, on Walnut street, faced southwardly.   These
openings were framed in with wood, and a portable cover was
provided for each, which rested in the frame.   When it was
desired to ventilate the basement, these covers were lifted up
and laid back against the wall of the building.

On the 23d day of October, 1895, between half past three
and four o'clock, the plaintiff who was at that time about five
and one-half years of age, fell into one of these openings,
which was about six and one-half feet deep, and fractured his
right thigh bone, at or a little above its middle.

Edith H. McKissick, the mother of plaintiff, testified to
the date when the accident occurred, and to the injuries which
plaintiff sustained.   On cross examination she stated that she
had "never noticed" the opening into the basement on the
Walnut street side of the engine house, as to whether it was
open or closed.   That she had never noticed it before the
accident happened.

Patrick William Cleary testified that he was an employee
of the fire department and was in the engine house at a south
side window when the boy was hurt; that the first he heard of

the accident was when he and a few other men standing there, with him heard the pitiful voice of a child, when they raised the window, and he concluded the sound came from the cellar, at which they went into the cellar and found the boy in the window of the cellar, in the east end of the cellar, on the east side of the opening on the south side of the building, in or below the opening. Asked to describe the opening, whether it was a cellar opening, he answered it was "a ventilator to the cellar," opening on the sidewalk about two and one-half feet square inside of the frame—such was its measure at the time of the accident; at the time he found the boy the hole was open, the door was off; could not say how long it was opened before the accident; the foreman of the house was in charge of the station at the time; the hole was about six and a half feet deep from the sidewalk surface down to the bottom where they found the child; the opening, frame and all, extended about three feet into the sidewalk from the wall of the station house; Bernard King and Hines, of the fire department, were with witness when they picked up the boy. On cross-examination the witness testified that he had not observed the door before the boy was hurt. On re-direct examination he testified that the doors were supposed to be portable; they were not on hinges but were made to put on or take off; had no handle on them to raise them with; the door was on a raised frame of cedar, raised four inches from the sidewalk; the door was in one piece, double thickness.

Mrs. Agnes Exavia Sword testified that on October 23, 1895, she lived at 2309 Walnut street, about three-quarters of the block east of the engine house, and had lived there six years and four months; that she had passed the engine house very often before the 23d of October; that she knew the opening or passway leading from the sidewalk into the cellar of the station; that it was three feet long; that she saw it the evening before—the 23d of October—and it was three feet long and about two feet wide, with a ledge which stood about four

inches above the sidewalk; that the door was usually thrown up in good weather; that it was up the evening before, thrown against the wall, resting against the wall lengthwise; the building was occupied by the fire department of the city, with horses, men and engines; there were two openings into the cellar of the station; on the evening before I only noticed one of them—it was open—the eastermost one. I saw Leon in my back yard; they were all playing horse with my little boy five or ten minutes before Leon fell in. On cross-examination witness testified that the main entrance of the engine house is on Jefferson avenue; had seen the hole very often; there is a driveway entering the building on Walnut street side, and the two holes are on either side of the driveway—it was the one on the east side I noticed the evening before; I saw them both open at the other time—both openings had lids. "Question: You do not remember having noticed them between the last of August and the day before the accident to Leon McKissick? Answer: It has got to be such an old story that I never paid much attention to them; they were always open the best part of the time, everytime I went up, there very near; I have seen them down and the boys sitting on them about ten o'clock at night between August and the time of the accident."

Bernard King testified that he was a fireman of the city, at the station on Jefferson avenue and Walnut; stationed there for twenty-three years. I was there when the boy was hurt and went to his rescue first and found him sitting in the bottom of the west hole, about six and one-half feet deep; either the foreman or assistant foreman was in charge of the station house; both are city employees; I picked the boy up and handed him to Cleary.

Mary P. Brearlet testified that on October 23, 1895, she lived at 2309½ Walnut street, where she had lived eight years up to that time; knew the station house on Jefferson avenue and Walnut; passed it every two or three days; knew the cel-

lar openings there; passed the station house at 2 o'clock in the afternoon the day the boy was hurt; both cellar openings were then open; noticed the condition of the openings nearly every week.

Patrick McCann testified that he knew the premises northeast corner of Jefferson avenue and Walnut, containing the station house, seven or eight years before October 23, 1895; Walnut street was a thoroughfare where people walked on the sidewalks usually as on any other street; observed the openings into the cellar of the station like anybody else passing by. The following questions and answers were next put: "By Mr. Taylor: What was its condition; I will ask you whether it was open or shut or what were the peculiar features of the thing? A. I lived in the block and had occasion to go up and down the sidewalk the same as anybody else would and I have seen these places in this condition, and made a remark to the foreman of the company. By Mr. Taylor: Q. State the condition A. The condition was bad. Q. Describe it? A. The boards were off the hole; I mean by the boards, the covers; they were off all the time; they were off as often as they were on; this was the condition of the holes from two to four months before October 23; it would be open in dry weather to let air out of the holes; it would be closed in bad weather; can not specify dates when it was open or closed; spoke to the foreman two or three months before 23d of October." On cross-examination witness testified that he passed by the place every day pretty nearly, but was not able to fix any day or hour he did so.

It was thereupon admitted by defendant that plaintiff's curator, W. C. Richardson, was duly appointed as such and qualified by the probate court of the city of St. Louis before the suit was brought.

This was all the testimony introduced by the plaintiff, whereupon, at the request of the defendant, the court gave to the jury an instruction that upon the pleadings and evidence

the plaintiff could not recover, to the giving of which instruction the plaintiff at the time excepted. The plaintiff thereupon took a nonsuit, with leave to move to set the same aside, and within four days thereafter, at the same term of the court, he filed his motion to set aside the nonsuit, for the reason that: 1st, the court erred in admitting illegal evidence asked for and produced by the defendant on cross-examination of witnesses of plaintiff; 2d, the court erred in excluding legal evidence offered by plaintiff; 3d, the court erred in giving an instruction to the jury to find for the defendant; 4th, upon the pleadings and evidence there should be a verdict and judgment for plaintiff. The court overruled the motion and the plaintiff duly excepted at the time. Plaintiff appeals.

Plaintiff contends that there was ample evidence of constructive notice to the city of the dangerous condition of the sidewalk before the accident to take the case to the jury.

While it is the duty of the city of St. Louis to keep its sidewalks in a reasonably safe condition for the use of pedestrians traveling thereon, it is not to be charged with negligence in this case because of the defective condition of the sidewalk where the accident occurred, unless it had notice of the defect or unless it existed for a sufficient length of time to justify the inference that it knew of the defect or by reasonable diligence could have acquired such knowledge in time to have repaired it before the accident. And as to what length of time would be required to justify the inference of the knowledge of such defect, there is no fixed or definite rule, and each case must depend upon the facts and circumstances attending it. Thus if the defect existed on a street much traveled and in use, it seems that the duty of the city to the public in looking after its condition required greater diligence in seeing that it was reasonably safe for travel, than if it had been but little used. [Young v. Webb City, 150 Mo. 333.]

In Bonine v. City of Richmond, 75 Mo. 437, a loose plank in the sidewalk was the cause of the accident. It had

been repaired the day before the accident happened by being nailed down, but become loose again, though it did not appear how long before the accident. An instruction was asked by defendant city, which told the jury that the city could only be held responsible for the injury to plaintiff if it appeared from the evidence that defendant had actual notice of the defective sidewalk on which she was hurt. This instruction was refused, and correctly so, for if it contained a correct presentation of the law, then the presumption of knowledge by a municipality of the dangerous condition of its sidewalk could never be indulged from lapse of time however long the sidewalk may have been in that condition. But the judgment which was in favor of plaintiff, was reversed because of the refusal of the trial court of the following instruction asked by defendant. "Although the jury may believe from the evidence that plaintiff was injured in consequence of the defect in defendant's sidewalk, unless they further believe from the evidence that defendant had notice of the defect in the sidewalk which caused the injury, or facts from which notice might reasonably have been inferred they will find for the defendant." With respect to this instruction the court said: "It appears from the record before us, that the evidence tended to show that defendant, through its agent, the street commissioner, the day before plaintiff was injured by the loose plank on the sidewalk, had repaired the sidewalk by nailing down all the plank, and that on the next day large crowds of persons in the town for the purpose of witnessing a circus, had passed over the sidewalk, whereby the plank was loosened. This evidence clearly entitled defendant to have in an instruction the benefit of the principle we have discussed herein, and, as it was denied to it, the judgment will be reversed and the cause remanded, in which all concur."

As the sidewalk which was the cause of the injury in that case was shown not to have been out of repair for more than one day before the accident, the only logical deduction to

be drawn from the comments of the court upon the instruction quoted, seems to be, that one day's notice either implied or actual by the defendant in that case, before the accident, of the dangerous condition of the sidewalk which occasioned it, was sufficient in order to hold the city liable therefor.

In Carrington v. St. Louis, 89 Mo. 208, the plaintiff who was a minor, brought suit to recover damages for injuries sustained by falling against iron trap doors of a cellar-way in a sidewalk. The doors opened into a cellar-way which led into the cellar under a building occupied by the police commissioners of the city of St. Louis, as a police station. A member of the police force opened the doors, painted them, propped them up and left them in that condition to dry. Plaintiff fell on them and was injured. The evidence tended to show that the doors were seen open between one and two o'clock in the afternoon and continued propped open until the plaintiff got hurt, about half past five o'clock of the same afternoon. The sidewalk at this place was much resorted to for travel, so much so that scarcely ten seconds of time intervened between the time in which persons would pass and repass both day and night. The court instructed the jury that the policeman who propped the doors up was not the agent of the city, and that his negligence was not its negligence, and left it to them to determine "whether the dangerous condition of the sidewalk and cellar-way was known to the city, or by the use of ordinary care might have been known to it in time to have the same safe and thus prevented the injury." The court said: "Assuming that the policeman was not the agent of the city, then there is no evidence that any agent had knowledge of the defect. Obviously then, under the principles of law before stated and the instruction which is in conformity therewith, the question is, was there evidence entitling the case to go to the jury on the ground that the defendant should have known of the defect? Negligence in not knowing of the dangerous condition of the doors may be shown by circumstances, includ-

ing the lapse of time during which the defect existed. Besides the undisputed facts before stated, the evidence tends to show that the doors were seen open between one and two o'clock in the afternoon and continued propped open until the boy got hurt, about half past five o'clock of the same afternoon; that it was dark when he fell upon the doors, though the streets lamps at that particular place and the gas jets at the station had not been lighted; and that the sidewalk at this place was much resorted to for travel, so much so that scarcely ten seconds of time intervened between the time in which persons would pass and repass both day and night. The sidewalk was ten feet wide and the doors extended out from the building and into the walk four feet eight inches. This evidence we hold fully justified the court in submitting the question to the jury. Much depends upon the surroundings in cases of this character, for what might be negligence in not knowing of a dangerous condition of a sidewalk at one locality in the city would be at another. The walk was much used and resorted to and that called for increased care on the part of the city."

It will be observed that in that case the dangerous condition of the sidewalk was not shown to have existed for more than four hours before the accident, yet it was held that it was properly submitted to the jury. It is true that much stress was placed in the opinion upon the fact that the street where the accident happened, was much resorted to for travel, while in the case at bar the evidence showed that the street was a thoroughfare where people usually walked, as they did upon any other street. But in this case there was evidence tending to show that the openings in question were open very often, and the best part of the time in good weather before the day of the accident, for how long it does not appear it is true, but the effect of the demurrer to the evidence was not only to admit these facts to be true, but every material inference to be drawn therefrom (Young v. Webb City, *supra*), and when

this shall have been done, we think under the authorities cited, it might have reasonably been inferred that the city knew, or might by the exercise of reasonable diligence have known, of the unsafe condition of the sidewalk in time to have made it safe and thereby averted the injury. Our conclusion is that the court committed error in sustaining the demurrer to the evidence.

As from what has been said the judgment must necessarily be reversed we deem it unnecessary to pass upon other questions raised by counsel in their briefs.

The judgment is reversed and the cause remanded, to be proceeded with in accordance with the views herein expressed.

*Gantt, P. J.,* and *Sherwood, J.,* concur.