MAMIE PETERSON v. KANSAS CITY, Appellant.—23 S. W. (2d) 1045.

Division One, February 3, 1930.

*Solon T. Gilmore* and *John D. Wendorff* for appellant.

*Mosman, Rogers & Buzard* and *Virgil Yates* for respondent.

RAGLAND, J.—The appeal in this case was originally taken to the Kansas City Court of Appeals, where an opinion was delivered. On the dissent of one of the judges that court certified and transferred the cause to this court pursuant to the provisions of Section 6 of Article VI of the Constitution.

The action is one for personal injuries. From a judgment for plaintiff in the sum of $5,000 the defendant appealed. On its appeal it assigns as error: (1) the refusal of the trial court to sustain its demurred to the evidence; and (2) the refusal to set aside the verdict, on the ground of the alleged passion and prejudice of the jury. It will only be necessary therefore to set out such facts as plaintiff's evidence tended to establish.

Between nine and 9:30 o'clock on the evening of April 7, 1922, the plaintiff, a married woman twenty-seven years of age, was returning to her home from a neighborhood picture show in company with her husband. In doing so she came along Summit Street to 23rd Street (both public highways in Kansas City) where she turned to go west. As she started west on 23rd Street she tripped over an iron balustrade which had fallen from a second-story balcony of the building fronting on the street at that place and which was lying flat across the sidewalk. The balustrade lying across the walk was six or eight feet long and three feet wide. There was an electric arc lamp suspended over the street at the corner, but it was not burning

at that time. Plaintiff fell forward striking her forehead on the concrete walk: the injuries she thereby sustained will be set out in some detail hereafter.

One of plaintiff's witnesses in going to his place of employment passed along where plaintiff was subsequently tripped by the balustrade between 6:30 and seven o'clock on the morning of April 7, and the balustrade was lying across the walk at that time. When he returned at noon it was leaning against the adjoining building, the lower side resting upon the walk; it was in the same position in the evening about 5:15 when he again passed going home. Another of plaintiff's witnesses while on her way to a picture show, between 6:30 and seven o'clock on the evening of April 7, saw the balustrade again lying flat across the walk. The *locus in quo* was in a densely populated section of Kansas City: the sidewalk was much used by the public for travel, both day and night.

Plaintiff offered in evidence a paper writing, signed by her and addressed to the mayor of Kansas City, in which was set forth the place where and the time when she received the injuries for which she now seeks a recovery, together with the character and circumstances of the injury, and that she would claim damages therefor from the city. Immediately following the plaintiff's signature on the paper writing this appeared:

"I hereby acknowledge service of the within notice by receiving an exact and true copy of the same at my office in Kansas City, Missouri, on this 30th day of June, 1922.

"FRANK H. CROMWELL,
"Mayor of Kansas City, Missouri.
"By BURR N. MOSSMAN,
"Asst. City Counselor."

When the paper was offered, defendant's counsel objected as follows:

"I object to that for the reason it does not comply with the statutes as made and provided. It is not served on the mayor, as provided by statute. It shows on its face it is not."

Thereupon plaintiff offered evidence with respect to the service of the notice which tended to show the following facts: One of plaintiff's attorneys, Mr. Park, took the paper which was offered in evidence and a copy of it to the mayor's office in the City Hall for the purpose of delivering the copy to the mayor and securing his written acknowledgment of service on the original. The mayor was not there: he found but one person in the office; that individual directed him to take the paper to the city counselor's office. At the latter office (in the City Hall) Mr. Mossman, an assistant city counselor, received the copy and gave the written acknowledgment of service in the name of the mayor, as above set out. During a preceding administration the mayor had referred all such notices

to the city counselor, and had given him and his assistants authority to accept service and make acknowledgments thereof for and on behalf of the mayor. The practice so inaugurated was followed by succeeding administrations and had been in vogue ten years at the time of the acknowledgment of service entered upon the paper in question by Mr. Mossman. The then mayor, Mr. Cromwell, had not given the city counselor express authority to accept and acknowledge service of such notices, but the practice just referred to was recognized and consistently followed by both offices. Following the proof of the facts just mentioned the court overruled defendant's objection and the written notice was received in evidence, the defendant saving its exception to the ruling.

Appellant's contention that the trial court erred in not sustaining its demurrer to the evidence is based on two grounds: (1) The written notice just referred to was not served on the mayor, as Section 8904, Revised Statutes 1919, requires; and (2) the iron balustrade was not on the sidewalk a sufficient length of time prior to plaintiff's injury to put defendant on notice. The alleged passion and prejudice of the jury is inferred solely from the claimed excessiveness of the verdict. This outlines the specific questions presented for consideration.

I. Appellant finds no fault with the written notice of respondent's intention to claim damages in respect to its form or contents: the point it makes is that the notice was not served on the mayor.  The statute provides merely that "notice shall first have been given in writing to the mayor:" as the manner of service is not prescribed, personal service is required. [20 R. C. L. 343.] But "where notice is actually conveyed to the person to be notified, as by service on a duly accredited agent, this is sufficient." [20 R. C. L. 356.] "It cannot admit of doubt that a person, to be affected by such a notice, may expressly authorize an agent to receive such a notice for him, and that delivery of the notice to such an agent would be a delivery to his principal, which would be a personal service within the meaning of such statutes." [Wilson v. Trenton, 53 N. J. L. 645, 649; see also Costello v. Kansas City, 219 S. W. l. c. 385.] Nor can there be any doubt but that the receipt and acknowledgment of service of the notice required by said Section 8904, Revised Statutes 1919, is a mere administrative detail which the mayor can authorize his secretary, a clerk in his office or any other suitable agent to perform. [Powers v. Kansas City, 18 S. W. (2d) 545.] It is plain therefore that if the city counselor and his assistants were authorized by the mayor to accept and acknowledge service of such notices for him, personal service on one of them would be personal service on him.

The duty of investigating the merits of such claims as that of respondent devolved upon the city counselor of Kansas City, and not the mayor. [Sec. 24, Art. IV, Charter of 1908.] For that reason no doubt the custom came about of the mayor referring notices of such claims to the city counselor's office with the authority for that officer or his assistants to accept service and make suitable acknowledgment thereof. The delegation of power involved in such custom had not been revoked, but was recognized as a continuing one by both the mayor and city counselor at the time of the service in question. But aside from that, when the assistant city counselor accepted a copy of respondent's notice and gave a written acknowledgment of its receipt, all in the name of the mayor, his act was tantamount to an affirmation on his part that he was duly authorized by the mayor so to do. The affirmation so made was within the general scope of his powers as an officer of the city, and the respondent having acted upon it in good faith, the city is bound by it. The rules which regulate the business transactions of life, and which enjoin good faith, honesty and fair dealing, are alike applicable to individuals and corporations. It is now well settled, that as to matters within the scope of the powers of municipal corporations and the powers of their officers, such corporations may be estopped upon the same principles and under the same circumstances as natural persons. [H. & St. Joseph Railroad Co. v. Marion County, 36 Mo. 294; Montevallo v. School Dist., 268 Mo. 217, 186 S. W. 1078; City of Mountain View v. Tel. Ex., 243 S. W. 153; Herman on Estoppel, sec. 1222, p. 1363.] It follows: that for the purpose of receiving the notice in question and making acknowledgment thereof the assistant city counselor was the accredited agent of the mayor; that service upon him was service upon the mayor; and that as a consequence the respondent gave the mayor notice in writing of her claim against the city, as alleged in her petition.

II. There is no definite rule by which can be determined as a matter of law the length of time that must elapse before a city can be chargeable with notice of the existence of a dangerous obstruction in one of its public highways. Each case must be ruled upon its own particular facts. In Beauvais v. St. Louis, 169 Mo. 501, 504, the following statement of the law, appearing in an instruction of the trial court, was approved:

"As to what length of time would be required to justify the inference of the knowledge of such defect by the city of St. Louis there is no fixed or definite rule, and each case must depend upon the facts and circumstances attending it. Thus, if the jury believe from the evidence that Rutger Street at the point in question was a street much traveled and in use, the duty of the city in looking after

its condition required greater diligence in seeing that it was reasonably safe for travel than if it had been but little used. And in a much-traveled street, if a defect existed which the jury believe from the evidence was easily to be seen, the existence of such a defect for only a few hours might justify the jury in the inference of knowledge on the part of the city of such defect, or that by reasonable diligence it could have acquired such knowledge in time to have repaired it before the accident. Much depends upon the surroundings, and what might be negligence in not knowing of a dangerous condition of a sidewalk at one locality in the city would not be at another, and the jury are to determine the fact of whether or not negligence on the part of the city existed in this case from the facts and circumstances they believe the evidence herein shows.''

See also Carrington v. St. Louis, 89 Mo. 208, 1 S. W. 240; Young v. Webb City, 150 Mo. 333, 51 S. W. 709; McKissick v. St. Louis, 154 Mo. 588, 55 S. W. 859; Cooper v. Caruthersville, 264 S. W. 46.

In consonance with the rulings in the cases just cited and referred to, it must be held that the question of whether the city in this case, in the exercise of ordinary care, would have discovered the balustrade on the walk a sufficient length of time prior to plaintiff's injury to have removed it and thereby prevented the injury was one to be determined by the jury.

III. The external evidence of the injuries that plaintiff sustained from the fall on the concrete walk consisted of a wound about an inch above the right eyebrow and another laceration in the neighborhood of that. The principal wound was about a half or three quarters of an inch in length, irregular in shape, and about a fourth of an inch deep. Immediately following her fall plaintiff developed a highly nervous condition; she became, and continued to be, weak and dizzy; presently anemia set up, manifesting itself in low blood pressure, rapid pulse, palpitation of the heart, insomnia and a general impairment of health. The experts introduced by plaintiff testified that these symptoms indicated that plaintiff was suffering from a disturbance of the central nerve system, sometimes called concussion of the brain, which could have been caused by the striking of her head against the sidewalk when she fell. The evidence left no doubt but that plaintiff prior to her injury was in the enjoyment of good health and was perfectly normal in that regard. Her medical experts further testified that the conditions which developed following her injury, just described, were in their opinion permanent. All of these matters relating to the nature and extent of plaintiff's injury were put sharply in issue by defendant's evidence. That evidence is not summarized for the reason that the question of excessiveness of the verdict must be considered from

somewhat the same angle as a demurrer to the evidence—all the evidence tending to support the verdict must be taken as true.

Excessiveness of verdict, not attributable to error or misconduct in the trial, is not, on appellate review, regarded as an unconditional ground for the reversal of the judgment, because it may be cured by *remittitur*. The distinction between the functions of the trial and the appellate courts in that regard is shown by the discussion, and the cases collected and cited, in subdivision III of the opinion in the case of Sofian v. Douglas, 324 Mo. 258, decided at this term.

In this case the jury returned a verdict for $7,500, but the trial court as a condition for overruling defendant's motion for a new trial required plaintiff to enter a *remittitur* of $2,500. *Remittitur* was entered and judgment was rendered for $5,000. If plaintiff's evidence as to the character and permanency of her injuries be true, as must be considered, it is obvious that a judgment for $5,000 is not excessive.

IV. Appellant complains of an instruction given at plaintiff's instance. The giving of the instruction was not included in its assignment of error. The question with respect to the alleged error was raised for the first time by appellant's counsel in oral argument. It cannot be considered.

Appellant assigns as error the refusal of an instruction offered by it, designated as "G," but the trial court's action in that respect was not mentioned or referred to in its motion for a new trial. It is, therefore, not here for review.

In view of the conclusions reached the judgment of the circuit court must be affirmed. It is so ordered. All concur.