## FEDERAL DEPOSIT INS. CORP. v. HARTFORD ACCIDENT & INDEMNITY CO.

No. 8235(2).

United States District Court
E. D. Missouri, E. D.

July 22, 1952.

---

Lashly, Lashly & Miller and Jacob M. Lashly, of St. Louis, Mo., for plaintiff.

Roberts P. Elam, of St. Louis, Mo., for defendant.

HULEN, District Judge.

Plaintiff, as purchaser of certain of the assets of the Brazeau Bank, brings this suit for $19,695.12, on a fidelity bond issued to the bank as insured, alleging the sum was lost by the insured through false representation, and covered by defendant's fidelity bond. Jury was waived and the case is now for decision on its merits.

William J. Schneier had an account in his name in the insured bank. Schneier, as one of two partners, had an account with the Bank of Altenburg in the name of H & F Truck Service. For the purpose of obtaining money from the insured, Schneier, caused the insured to accept for deposit, to the credit of his personal account in insured bank, three checks drawn by him on the H & F Truck Service account in Bank of Altenburg, and payable to Schneier. The checks were dated December 26, 1950, for $6,523.96, December 28, 1950, for $6,645.29, and December 30, 1950, for $6,525.87, respectively. The checks were sent through regular channels, or insured's correspondent bank in St. Louis, for payment. There was not sufficient funds in the H & F Truck Service account to pay any one of the checks on presentation. By means of checks drawn on his personal account with insured bank, Schneier drew from insured bank the amount of the three checks, prior to presentation for collection of the checks, on the Bank of Altenburg. The insured bank sustained a loss of the amounts of the checks. The loss caused it to close its doors and liquidate. In the liquidating proceedings, as insurer of deposits, plaintiff obtained title to the cause of action on the fidelity bond in suit. Notice of loss and proof of loss was given in accordance with the terms of the policy. The foregoing facts are covered either by admission in the pleadings or pre-trial order. Schneier pled guilty of fraud before this Court, and is serving a sentence for the transaction here in suit.

In a letter dated July 23, 1951, defendant advised plaintiff it was denying liability because:

"The loss that they have sustained was one that occurred away from the premises thus eliminating it from falling under insuring Clause B and falling to the false pretense cover set forth therein."

The bond is in the sum of $20,000. Clause (B) upon which liability is predicated reads:

"(B) Any loss of Property through robbery, * * * false pretenses, * * * whether effected with or without violence or with or without negligence on the part of any of the Employees, and any loss of subscription, conversion, redemption or deposit privileges through the misplacement or loss of Property, while the Property is (or is supposed to be) lodged or deposited within any offices or premises located anywhere, except in the office hereinafter excluded or in the mail or with a carrier for hire, other than an armored motor vehicle company, for the purpose of transportation.

"Any loss, through any hazard specified in the preceding paragraph, of any of the items of property enumerated in the paragraph defining Property, while within any of the Insured's offices covered hereunder and in the possession of any customer of the Insured or of any representative of such customer, whether or not the Insured is legally liable for the loss thereof, excluding, however, loss caused by such customer or any representative of such customer."

The bond being the product, as to terms and terminology, of the defendant, certain rules control its construction. See Massachusetts Bonding & Insurance Co. v. Feutz, 8 Cir., 182 F.2d 752, loc. cit. 756:

"The defendant, however, is a compensated surety and in the construction or interpretation of the contract of such a surety the contract is construed most strongly against the surety and in favor of the indemnity. Such a contract is to be regarded as in the nature of an insurance contract governed by the rules applicable to insurance contracts and if the bond in suit is fairly open to two constructions or interpretations, one of which would uphold and the other defeat the claim of the insured, that interpretation or construction which is most favorable to the insured will be adopted. [Citing cases]"

■ We are not in accord with defendant that a fair construction of Clause B requires that the false representation be on the premises of the insured bank. As we read the clause there is no condition of place as to where the false representation be made. There are terms that would indicate location is a consideration as to the property which is the subject of the loss. However, the point is moot. The presentation of the checks to the insured constituted the representation. That took place at the insured bank. State v. Griggs, Mo.Sup., 236 S.W.2d 588.

■ Defendant contends there is no evidence Schneier knew the check would not be paid when he presented it. This is a civil and not a criminal case. The checks having been drawn by a partner, on the partnership account, places the drawer in the same position as to knowledge of the status of the account as if it were his personal account. 68 C.J.S., Partnership, § 227(b); 40 Am.Jur., Partnership, § 150. This on the theory of agency. Dixon v. Dixon, Mo.Sup., 181 S.W. 84; Peterson v. Kansas City, 324 Mo. 454, 23 S.W.2d 1045.

■ There is a further basis of knowledge, by Schneier, that the presentation of the check was a false representation, because of lack of funds to pay it in the account on which it was drawn. Section 561.470 RSMo1949, V.A.M.S., provides:

"As against the maker or drawer thereof, the making, drawing, uttering or delivering of a check, draft or order, payment of which is refused by the drawee, shall be prima facie evidence of intent to defraud and of knowledge of insufficient funds in or credit with, such bank or other depositary, provided such maker or drawer shall not have paid the drawee thereof the amount due thereon, together with all costs and protest fees, within five days after receiving notice that such check, draft or order has not been paid by the drawee."

The protests (Pl. Exs. E, F and G) show notice to Schneier. No objection was made to these exhibits. The terms of the statute were met. The pre-trial order admits the insured was unable to collect the amounts of the checks from Schneier.

The main contention of defendant is that because the three checks were drawn on the partnership, evidence of knowledge of lack of funds or that the checks would not be paid is lacking. This claim of defendant is answered—by the presumption, in a civil case, of knowledge of a partner of the partnership affairs; by the statute quoted; by the testimony that Schneier was engaged in a check-kiting scheme. These facts, coupled with a refusal of payment on each check, makes a prima facie case of knowledge on the part of Schneier of the falseness of the pretense that the checks would be paid on presentation, in the absence of any proof on defendant's part to create an issue on the proposition.

We find no merit in defendant's claim that the officers of the Brazeau Bank should have departed from its usual custom in carrying on its banking business and should have called the bank on which the checks were drawn to see if they were good. It is a part of false pretense to lull the victim into a feeling of security in order to perpetrate the fraud. So here we find Schneier taking advantage of his personal acquaintance with the bank officer and her belief in his integrity. People in small towns know one another and impose trust in those with whom they have had business relations over a long period of time without cause to doubt their honesty. It was this small-town confidence upon which Schneier

knowingly acted. Of course no bank in the City, to whom Schneier was a stranger, would have cashed any check, of any size, for Schneier, absent proof of his reliability.

Schneier did not get the money on the checks instanter upon presentation of the checks, but took some days to check it out. Defendant urges this circumstance as showing a relationship of debtor and creditor with Schneier and the bank because the Bank of Brazeau permitted Schneier to check on the deposit before the checks cleared. It is also claimed the Bank of Brazeau was Schneier's agent to collect the checks. We are not concerned with the niceties of legal relationship between the bank and Schneier. A creditor or agent may be the victim of loss by false pretense. The bond makes no such exemption. Under no view of the case can we find that the bank intended to extend Schneier a loan or that Schneier sought to make a loan. It is not before us but if it were an issue, it is doubtful if the Bank of Brazeau could legally make a loan for the sum involved. There was no loan made. The intent of the parties must govern. Here Schneier intended to get the bank's funds by the use of the checks. They were the basis of the false pretense. The fact that he did get the money is undisputed. We find he got the money by virtue of the checks. Without use of the checks he would not have received it.

■ On the issue of penalty for vexatious refusal of defendant to pay its bond obligation, defendant argues it has in good faith contested "whether or not Schneier had knowledge of the falsity of any representations to be attributed to him by the mere depositing of the checks to his account in Brazeau Bank." We cannot agree this issue was open to good faith dispute by defendant. Defendant had knowledge that Schneier had pled guilty to defrauding the insured, growing out of presentation of the checks. It was a public record. Certainly defendant must have investigated the case and received actual knowledge of such plea by Schneier. If the facts and law were as defendant here contends in a civil case, Schneier would not have pled guilty to fraud on the same facts in a criminal case.

Considering the pre-trial order, admissions in the pleading, and the record as a whole, we are unable to find grounds upon which defendant could reasonably and in good faith contest the claim of plaintiff.

We consider $2,000 as a reasonable attorney's fee.

Judgment may be settled and submitted.