**Alice QUINN, Plaintiff-Respondent,
Lou Quinn, Plaintiff,**

**v.**

**Floyd R. GRAHAM, Catherine L. Graham, Elizabeth Ketcham, George Beimdiek, Agent and Attorney in Fact for Elizabeth Ketcham, Defendants,**

**The City of Carthage, Missouri, a Municipal Corporation, Defendant-Appellant.**

**No. 8722.**

Springfield Court of Appeals.

Missouri.

April 29, 1968.

James A. Dunn, Ben Pyle, Carthage, for plaintiff-respondent and for plaintiff.

Laurence H. Flanigan, McReynolds, Flanigan & Flanigan, Carthage, for defendant-appellant.

John R. Martin, Joplin, for defendants Graham.

Edward G. Farmer, Joplin, for defendants Ketcham and Beimdiek.

TITUS, Judge.

The sole appeal in this cause is by the City of Carthage, a city of the third class (V.A.M.S. Chapter 77), from a judgment entered on a $5,000 jury verdict returned in the Circuit Court of Jasper County in favor of plaintiff Alice Quinn who sought damages because of an accident she is said to have encountered on a public easement. A $1,000 verdict-judgment for her husband on his derivative action was set aside by the trial court for his neglect to give the city any written notice of his claim. V.A.M.S. § 77.600; Dohring v. Kansas City, 228 Mo. App. 519, 71 S.W.2d 170. The other defendants were exculpated by the jury.

Initially the city contends the trial court should have directed a verdict in its favor because the written notice given by Mrs. Quinn "is legally insufficient and defective under the mandatory provisions of" V.A.M.S. § 77.600 which provides:

"No action shall be maintained against any city organized under the laws of this state as a city of the third class on account of any injuries growing out of any defect or unsafe condition of or on any bridge, boulevard, street, sidewalk or thoroughfare in said city, until notice shall first have been given in writing to the mayor of said city, within ninety days of the occurrence for which such damage is claimed, stating the place where, the time when such injury was received, and the character and circumstances of the in-

jury, and that the person so injured will claim damages therefor from such city." [1]

The questioned notice follows:

"To: Ralph Rinehart, Mayor
City of Carthage
Carthage, Missouri

"Alice M. Quinn, Carthage, Missouri gives notice to the Mayor and the City of Carthage, Jasper County, Missouri, that on November 10, 1965 at about 12:30 P.M. while walking on the sidewalk located on Chestnut Street just West of the intersection of Chestnut Street and River Street, she slipped causing her to immediately fall violently upon the sidewalk.

"Alice M. Quinn states that she was severely injured and specifically her leg was fractured and broken and she received other serious and severe injuries but the full nature and extent of injuries have not yet been determined by attending doctors.

"/S/   ALICE M. QUINN
        Alice M. Quinn

"State of Missouri ⎞
                          ⎬ ss.
County of Jasper ⎠

"Alice M. Quinn of legal age being duly sworn states that the facts contained in the foregoing notice are true and correct according to the best of her knowledge and belief.

"/S/   ALICE M. QUINN

"Subscribed and sworn to before me this 10th day of November, 1965.

(SEAL)    "/S/   JAMES A. DUNN
                      Notary Public

My Commission expires:
10.17.69

"I certify that notice was given to Ralph Rinehart, Mayor, at City, Clerk's office, on November 12, 1965.

"/S/   VIRDEAN McREYNOLDS
          D. C.

"/S/   Filed 11/12/65
          W.E.F."

1. Statutes relating to the necessity of notice in maintaining actions against other cities are most similar. See V.A.M.S. §§ 73.950 (Cities of the First Class), 75.860 (Cities of the Second Class), 79.480 (Cities of the Fourth Class), and 82.210 (Constitutional Charter Cities—100,000 inhabitants).

Plaintiffs' petition was not filed until November 4, 1966, or almost a year after the accident. Therefore it could not, as in Hunt v. City of St. Louis, 278 Mo. 213, 223–224(1), 211 S.W. 673, 676(1), serve as an acceptable substitute for the written notice the statute required to be served within ninety days of the occurrence. The petition averred, inter alia, on the casualty date "Chestnut Street was a public street * * * upon the south side of which and running immediately along the front or North of the * * * Econ-O-Wash self-service laundromat, the defendant City * * * had constructed and was maintaining a concrete sidewalk. * * * That it was the duty of defendant * * * to exercise reasonable care * * * in the construction and maintenance of the sidewalk * * * [but] defendants * * * so negligently * * * constructed and maintained the said sidewalk and approaches to and from said * * * laundromat that plaintiff was caused to * * * fall down on the ground causing injuries." Defendants were specifically charged with permitting "the sidewalk and approaches thereto to remain in an unsafe and dangerous condition," failing to warn plaintiff thereof, and allowing "a large jagged mound of concrete to remain immediately adjacent to the sidewalk in front of the * * * laundromat." Defendant city's answer was a general denial coupled with an affirmative pleading that plaintiff Alice Quinn had been contributorily negligent and "is legally barred from maintaining this action * * * for the reason that said plaintiff failed to give the written notice * * * as required by Section 77.600 VAMS * * * [and] for the reason that the purported notice * * * is legally insufficient and defective under the requirements of Section 77.600 VAMS."

Exhibits and testimony reveal Chestnut Street to be an east-west avenue which extends west a distance of several blocks from River Street, a north-south thoroughfare. The roadway surface of Chestnut is paved and its north and south boundaries are outlined with curbings. There are paved concrete east-west sidewalks on both the north and south sides of Chestnut extending west from River Street. It was stipulated the "sidewalk on the north side of Chestnut Street, west of River, [is] similar in appearance" to the sidewalk on the south side of Chestnut. Between the curbs and sidewalks on both sides of Chestnut Street are unpaved areas which are commonly known and referred to by all the witnesses as "parkways." Plaintiffs conceded "the exact place where this occurrence took place is in * * * the 'parkway' between the curb line and the sidewalk."

The laundromat in question is situate at the southwest corner of the intersection of Chestnut and River. The front door to the building is on the north side thereof adjacent to the south edge of the south sidewalk on Chestnut. For a distance of "approximately thirty-one feet" west of River Street, both the sidewalk and parkway on the south side of Chestnut are concrete paved. This solidly paved area is in front of the east ⅗ths (our estimate) of the laundromat. West of this paved area the parkway is "dirt," and it was in the "dirt" parkway north of the west side of the laundromat building the white "concrete mass" was located. The "mass" measured thirteen inches east and west by twenty-one inches north and south. Its east end was "nearly level" with the ground but the west side extended "2 and ¾ inches" above ground level.

As far as is known, Mrs. Quinn was the only witness to her fall. She left home "around noon" in her "four door sedan," accompanied only by baskets of laundry and some soap or detergent. Arriving at the laundromat she stopped the car on Chestnut Street "a little ways" west of the front door "on the wrong side of the road," headed west with the left wheels of the automobile "up against the [south] curb." Plaintiff testified: "I got out [of the car via the front door] on the driver's side, which would be the left side, and I stepped onto the parkway * * * [in] the dirt area * * * [and] knew that the parkway

was not sidewalk * * * I walked back [east] * * * in the dirt * * * and opened the back door." She did not recall if she looked "at the ground," and her "attention was not distracted by anything." As Mrs. Quinn "reached in to get my laundry" from the back seat she was "facing the car, which would be north." She obtained a basket and turned to her right. She "probably did * * * take some steps" but did not remember taking "a step backwards toward the south before" turning. "I was standing on the parkway * * * I started to turn and I tripped and fell. * * * All I knew was I tripped and fell. * * * My right leg was under me, my elbow was on the ground." Plaintiff subsequently became aware of the existence of the "concrete mass" in the parkway and designated it as the cause of her tripping and falling. The principal injury sustained by Mrs. Quinn was "a fracture of the lateral malleolus of her right ankle."

The only testimony regarding service of the notice, supra, is that the deputy city clerk personally put her "signature to that paper" and the notation, date and initials "Filed 11/12/65 W.E.F." were affixed by the city clerk, William E. Fenimore. When the deputy city clerk "got it [the notice], it was filed there in the office * * * filed in the clerk's office there in the records."

■ The septuple requirements of V.A. M.S. § 77.600, supra, are that the notice (1) must be in writing, (2) it must be given to the mayor, (3) within 90 days of the occurrence, and it must contain a statement as to (4) the place where, (5) the time when such injury was received, (6) the character and circumstances of the injury, and a declaration (7) the person so injured will claim damages therefor from the city. Dohring v. Kansas City, supra, 228 Mo.App. at 521, 71 S.W.2d at 171. Giving of the notice in substantial compliance with the requirements of this statute is a condition precedent to the right to maintain the suit and to the right to recover damages (Shuff v. Kansas City, Mo.App., 257 S.W. 844, 846

(6); 18 McQuillin—Municipal Corporations, 3rd Ed. Revised, § 53.154, pp. 558–563), and "the giving of notice is required in every case, regardless of other sources and means of information possessed by the city." Lyons v. City of St. Joseph, 112 Mo. App. 681, 684, 87 S.W. 588.

The apparent rule is that the requirements of the statute that notice must be in writing and given to the mayor within the time specified are to be strictly construed [Cole v. City of St. Joseph, Mo., 50 S.W.2d 623, 624, 82 A.L.R. 742; Ogle v. Kansas City, Mo.App., 242 S.W. 115(1)], but as to the contents of the notice the statute is to be construed liberally in favor of plaintiff and strictly against the city so that a substantial compliance is sufficient. Gershon v. Kansas City, Mo.App., 341 S.W.2d 374, 376(1); David v. City of St. Louis, 339 Mo. 241, 246(2), 96 S.W.2d 353, 356(1), 106 A.L.R. 849; 18 McQuillin—Municipal Corporations, 3rd Ed. Revised, § 53.163, pp. 588–593.

Appellant-city asseverates the notice in this case was legally insufficient and defective because (a) it was not given to the mayor or to any person authorized by him to receive such notice, (b) it failed to notify the city of the "place where" plaintiff's injury was received, (c) it failed to state the "circumstances" or cause of the injury, and (d) it failed to state "that the person so injured will claim damages therefor from such city."

■ *Was there compliance with the statutory requirement the "notice shall first have been given in writing to the mayor"?* It is stated in V.A.M.S. § 1.190 that "Whenever any of the statutes of this state require or imply that a notice shall be given to any person concerning or affecting any right, property, claim, duty, matter or thing of any character or nature, unless the statutes expressly direct a different method of service, the delivery of a true copy of the notice to the person intended to be notified, or the leaving of a copy at his usual place of abode with some member of his family over the age

of fifteen years, constitutes a valid and sufficient service of the notice." V.A.M.S. § 77.600, supra, simply provides the notice is to be "given * * * to the mayor," and does not expressly or impliedly "direct a different method of service," and "as the manner of service is not prescribed, personal service is required." Peterson v. Kansas City, 324 Mo. 454, 458(1), 23 S.W. 2d 1045, 1047(1).

■ It was held in Reid v. Kansas City, 195 Mo.App. 457, 192 S.W. 1047, the accident reports filed with the city counselor by police officers and the city health commissioner could not be considered as legal substitutes for the statutory written notice which was not given by or on behalf of the plaintiff. The court stated [195 Mo.App. at 463(4), 192 S.W. at 1049(6)] the undertakings of the city counselor to defend the suit would not "create either a waiver of notice or an estoppel against the city. The statute [requiring notice] cannot be waived. * * * Even the mayor would have no power to waive notice. * * * Much less would the city counselor have such power." Nevertheless, if there be proof the mayor has expressly or apparently by custom designated some person to act as his agent or alter ego in accepting and receipting for him delivery of the required notice, delivery of such notice to the mayor's agent has been declared proper for "the receipt and acknowledgment of service of the notice * * * is a mere administrative detail which the mayor can authorize his secretary, a clerk in his office, or any other suitable agent to perform." Peterson v. Kansas City, supra, 324 Mo. at 458 (headnote 2), 23 S.W.2d at 1048(2); Powers v. Kansas City, Mo., 224 Mo.App. 70, 75–78 (headnote 1), 18 S.W.2d 545, 548–550(1). In Cummings v. Halpin, Mo.App., 27 S.W.2d 718, 720, it is stated "the opinions in the cases cited [including Reid, supra] have been overruled by the Supreme Court in * * * Peterson v. Kansas City." We do not agree. Reid, not cited in Peterson and a case where no

notice of any kind was prepared or served by or for the plaintiff, merely states the mayor of a city has no authority to waive or nullify a statutory requirement of notice solemnly enacted by the legislature. This in no way appears incompatible with Peterson's recognition a duly authorized agent may perform an act to be done by his principal. V.A.M.S. § 1.060.

■ The sufficiency of the service of the notice was not questioned in the trial court in Callahan v. Kansas City, 226 Mo. App. 408, 41 S.W.2d 894, and the court of appeals held it was too late to raise the question for the first time on appeal. The court (ex gratia it would seem) proceeded to "hold that service of the notice [on an assistant city counselor without proof of agency] was sufficient" because its receipt "was acknowledged in writing in the name of the Mayor." This appears bottomed on a quotation from Peterson, supra, that "when the assistant city counselor accepted a copy of respondent's notice and gave a written acknowledgment of its receipt, all in the name of the mayor, his act was tantamount to an affirmation on his part that he was duly authorized by the mayor so to do." We understand this quotation from Peterson to mean the counselor's acknowledgment was *his affirmation* that the agency previously established was so. If Callahan intends to indicate the mere written acknowledgment of the receipt of a notice on behalf of the mayor by some city official is alone sufficient to prove his agency to act for the mayor, then we cannot abide Callahan for "the law is well settled that neither the fact nor scope of agency can be established by the declarations [written or oral] of the alleged agent." Schwarze v. May Department Stores, Mo.App., 360 S.W.2d 336, 339(6).

■ In the present case the certificate on the notice was prepared by whoever prepared the notice. Although it was signed by a deputy city clerk and read, the "notice was given to Ralph Rinehart,

Mayor, at City, Clerk's Office," the only evidence on record is that this recitation was not true because the notice was simply "filed in the clerk's office there in the records." There was no showing made that the notice was ever given to the mayor, and no effort was made to prove the mayor had ever directly, by implication, or through custom or usage authorized the city clerk, his deputy, or any officer of the City of Carthage to act in his stead or as his agent in receiving, on his behalf, any notice provided for in V.A. M.S. § 77.600. The only possible intimation of agency comes from the fact the deputy clerk signed the receipt and the city clerk dated and initialed it. As previously stated, this is not sufficient to prove agency, and we agree with appellant-city the notice was defective because it was not given to the mayor or to any person authorized by him to receive such notice. Nonetheless, we ferret further.

■ *Did the contents of the notice comply with the requirements that it state the "place where" the casualty occurred and "the circumstances" or cause of the injury?* Many times it has been stated the purpose of V.A.M.S. § 77.600, and of other similar laws, is to protect the city from unjust or stale claims and to afford the city, by the notice required, information so it can locate with reasonable certainty the place where the accident occurred and be apprised of the circumstances or cause of the casualty with sufficient definiteness to permit its officers to undertake an investigation to ascertain the liability or nonliability of the city for the reported injury. Brickell v. Kansas City, Mo., 364 Mo. 679, 683, 265 S.W. 2d 342, 345, 41 A.L.R.2d 878; Johnston v. Kansas City, 211 Mo.App. 262, 267–268, 243 S.W. 265, 266–267; Beane v. City of St. Joseph, 211 Mo.App. 200, 205(1), 240 S.W. 840, 841–842(1); Reno v. City of St. Joseph, 169 Mo. 642, 655, 70 S.W. 123, 126.

■ The "place where" the casualty occurred is required to be stated with sufficient particularity to enable the city to locate the place of the injury unsupplemented and unaided by anything aside from ordinary intelligence. Precise exactness is not required, and the test of substantial compliance is satisfied if the notice is reasonably sufficient to enable the city officials to locate the place. City of West Plains, Missouri v. Loomis, 8 CCA, 279 F.2d 564, 566, 92 A.L.R.2d 459, 463; 63 C.J.S. Municipal Corporations § 925(3), pp. 360–362. "The true test in such cases is whether or not a person in the exercise of ordinary intelligence can take the notice and, with no other means of information than it suggests, go to the scene of the injury and find the spot where it occurred." Ballew v. City of St. Joseph, 163 Mo.App. 297, 301, 146 S.W. 454, 455.

■ There must also be substantial compliance with the statute that the notice describe the circumstances or cause of the injury, i. e., advise the city with reasonable certainty as to the defect or negligent act which plaintiff claims caused the accident. This need not be done with the nicety employed in drawing a pleading, and a faulty or inadequate description of the circumstances of the injury may be aided by the description of the place of the injury, and vice versa. 63 C.J.S. Municipal Corporations § 925(4), pp. 363–364.

■ We bear constantly in mind the statute must be reasonably construed. But on the other hand, a claimant should not be permitted to thwart the intent of the statute by indefiniteness when, with little or no effort, the true facts as to the place and circumstances of the injury may be clearly stated. "If the notice [is] so vague and indefinite in any of the particulars made essential by the statute as to be misleading, we would not hesitate in declaring it bad." Snickles v. City of St. Joseph, 139 Mo.App. 187, 192, 122 S.W. 1122, 1124. In testing the contents of a notice for reasonable compliance, we look

*to the proof.* If the degree of variance between the notice and the proof is great, the discrepancy will be fatal. Krucker v. City of St. Joseph, 195 Mo.App. 101, 103–104, 190 S.W. 644, 645–646.

As to the "place where" the accident occurred, the notice simply and inaccurately stated "on the sidewalk located on Chestnut Street just West of the intersection of Chestnut Street and River Street." From the stipulation of the parties we are advised there were two sidewalks, not one, on Chestnut Street extending west of the intersection each "similar in appearance" to the other. The city would not know which of the sidewalks was involved. But assuming it was not fatal to omit designating whether the north or south sidewalk was involved, the notice locates the place on the sidewalk "just West of the intersection." The word "just" when employed as an adverb "with reference to distance * * * means barely; closely; nearly; scarcely." 50 C.J.S. Just p. 1101. Armed with only the notice and ordinary intelligence, city officials would attempt to locate the unnamed defect or cause of the accident on one or the other of the two sidewalks on Chestnut Street barely west, closely west, nearly west, or scarcely west of the intersection. Inspecting the sidewalks in this area would not permit the officials to "put a finger on the negligent defect that plaintiff claimed caused her injury." Snickles v. City of St. Joseph, supra.

While "street," in a legal sense, may encompass all parts of the way, it is a matter of common knowledge, as displayed by all the parties and witnesses in this cause, that there are definite and separate areas of the entire easement devoted to different uses. The legislature recognizes the distinction by providing different systems for financing the construction and maintenance of each segment. V.A.M.S. §§ 88.507–88.530 and 88.870–88.900. The area between the curbs is generally thought of as being primarily designed for vehicular traffic. A parkway consists of that particular area of the way lying between the roadway and sidewalk or between the curb and sidewalk, while "sidewalk" is defined as "a walk for foot passengers usually at the side of the street or roadway; a foot pavement." Webster's Third New International Dictionary, 1966, p. 2113; Rentfro v. Wheelock Bros., Mo. App., 364 S.W.2d 55, 57(1); Wendegatz v. Kansas City Gas Co., Mo.App., 217 S.W.2d 269, 271(2, 3); 31 Words and Phrases, Parkway, pp. 159–161; 10 Mc-Quillin—Municipal Corporations, 1966 Revised Vol., § 30.03, pp. 620–624, § 30.05, pp. 627–628, § 30.11, pp. 641–645. Therefore, when the notice designated "the sidewalk" as the "place where," persons of ordinary intelligence would direct their attention to an inspection of the walks designed for foot passengers in an effort to locate the site and cause of the alleged fall. The proof belies the notice, for the accident did not occur on the sidewalk but "took place * * * in * * * the parkway between the curb line and the sidewalk * * * in the dirt," where plaintiff "knew the parkway was not sidewalk."

The "character" or cause of the injury, insofar as the notice advises, is that "while walking on the sidewalk * * * she slipped causing her to immediately fall violently upon the sidewalk." The proof varies from this assertion to a great degree because the occurrence did not happen while plaintiff "was walking on the sidewalk" nor when she fell "upon the sidewalk." The notice is wholly void of any reference to or suggestion that any defect or negligent act of the city caused or produced the fall "upon the sidewalk." There are myriad reasons a person might slip on a sidewalk, many of which would not be the fault or responsibility of a municipal corporation. The notice gives no hint to the city officials as to what they should look for in attempting to learn with any degree of certainty the character or cause of the occurrence. Plaintiff's notice to the city was that she *slipped*; her testi-

mony was "I *tripped* and fell. * * * All I know was I *tripped* and fell." Cognizant as we are of the cases which excuse the variance between slipping and tripping, we are also mindful those cases involved notices containing other facts sufficient to render the difference indiscernible, which the notice in this case does not. The City of Carthage officials, led by plaintiff's notice, would be searching for an unknown defect or negligent circumstance on the sidewalk (not in a parkway) on either the north or south side of Chestnut (not knowing which) that was located just or barely west of River Street, which might or would cause a person "walking on the sidewalk" to slip (not trip) and fall "upon the sidewalk."

The notice in this case, as regards its contents, is so indefinite in stating "the place where" and the "circumstances of the injury" as to be misleading to city officials in attempting to ascertain the place and cause of the casualty. The notice did not state "the place where" was in the parkway on the south side of Chestnut Street west of the intersection of Chestnut and River Streets in front of the west side of the laundromat. The notice did not state the cause of the injury was a large mass of concrete located in the parkway which caused plaintiff to trip and fall. If this was actually "the place where" and the "circumstances of the injury" as known to the plaintiff when her notice was given it would have been a simple matter to prepare the notice in the manner suggested. Even had investigators espied the concrete mass in the parkway on the south side of Chestnut, they would have no notion this was the basis for plaintiff's claim, for the notice misdirected their efforts in trying to find a defect or negligent condition in an undesignated sidewalk.

For the reasons stated, the trial court erred in failing to sustain the city's motion for directed verdict. Being of such mind makes it unnecessary for us to consider the other issues preserved and presented upon appeal.

The judgment for the plaintiff Alice Quinn is reversed.

HOGAN, P. J., and STONE, J., concur.