Matthew M. Levy, J.
The substance of the complaint follows:
Joseph Faroll & Co. (to whose interests the plaintiffs succeeded, and who will be called plaintiffs hereinafter) were stockbrokers. Their address was New York City. In 1956, one Albert J. Gould of Toronto, Canada, posing as a reputable and financially responsible businessman, caused himself to be presented to the plaintiffs. In order to gain their trust and confidence, Gould introduced to the plaintiffs several persons who executed some minor transactions and.promptly met their obligations. During May and June, 1957, Gould obtained from the president and directors of Cabanga Developments, Ltd., all of the capital stock of that company owned by them. Gouid paid for this stock by fraudulently misappropriating Cabanga \s bank account. On June 26, 1957, after Gould had obtained the Cabanga stock, he (in Toronto) telephoned the plaintiffs (I shall assume, in New York) and stated that he was representing several named individuals who wished to sell certain American securities and that the proceeds from such sale were to be used by these individuals to purchase shares in Cabanga. Actually, the persons so named by Gould had never authorized him to act on their behalf and had no knowledge that he was so acting. Proceeding with the transaction under usual stock exchange custom in such cases, the plaintiffs made the requested sale of the American securities without asking that the certificates be delivered to them before the sale thereof. The plaintiffs also purchased the Cabanga stock ordered, the certificates for which *550 were delivered by Gould in exchange for the plaintiffs’ checks (presumably at their offices in New York). While it was not known to the plaintiffs at the time, they could purchase from Gould, and no one else, the Cabanga shares that they bought from Gould. Eventually, it turned out that there was in fact no buyer for the Cabanga stock and that no American securities were delivered by Gould’s alleged friends. As a result of these transactions, the plaintiffs were compelled to buy the American stock on the open market at a price higher than they sold it for, so that they could make good their obligation to deliver the securities which they had sold. On the other hand, there being-no buyer of Cabanga stock at the stated price, the plaintiffs were obliged to sell to cithers at the true value of this stock, which was much lower than the price at which it had been bought. All told, the plaintiffs suffered a loss of $315,210.52.
Prior to these transactions, the defendant, for a valuable consideration, had issued to the plaintiffs certain policies of insurance known as “ Brokers Blanket Bonds ”, in which the defendant undertook to indemnify the plaintiffs against certain losses set forth in the policies. There are various types of losses covered— entitled as “fidelity”, “on premises”, “in transit”, “ forgery or alteration”, and “ securities ”. The only provision concededly applicable is that called “On Premises” — known as clause B, which, in its relevant part, reads as follows: “(B) Any loss of Property through robbery, burglary, common-law or statutory larceny, theft, hold-up, or other fraudulent means, misplacement, mysterious unexplainable disappearance, damage or destruction, abstraction or removal from the possession, custody or control of the Insured (whether effected with or without violence or with or without negligence on the part of any Employee), and any loss of subscription, conversion, redemption or deposit privileges through the misplacement or loss of Property, while the Property is (or is supposed to be) lodged or deposited within any offices or premises located anywhere, except while in the mail or in any of the Insured’s offices specifically excluded from the coverage of this bond or with a carrier for hire other than an armored motor vehicle company for the purpose of transportation. ’ ’ There were certain limitations on the defendant’s liability expressed elsewhere in the bonds, in that they did not cover “ [a]ny loss the result of any loan made by the Insured”, or “ [a]ny loss resulting directly or indirectly from trading * * # whether or not represented by any indebtedness or balance shown to be due the Insured on any customer’s account, actual or fictitious ”. The applicability of these limitations is disputed.
*551 This action is brought by the plaintiffs to recover under these broker’s blanket bonds. The plaintiffs assert that they lost the sum of money referred to through the activities of Gould under such circumstances as to bring the loss within the coverage of the policies. The plaintiffs allege that Gould’s now obvious purpose in the scheme was to find a purchaser for the Cabanga shares which he owned, that Gould was the sole instigator of the transactions, that there were no Gould friends as alleged, and that the transactions caused a loss of property to the insured through statutory larceny or other fraudulent means or abstraction or removal from the possession, custody or control of the insured while the property was lodged or deposited within the insured’s offices or premises.
Whether the plaintiffs will be able to prove the allegations of their complaint is not my present concern (Howard Stores Corp. v. Pope, 1 N Y 2d 110), for this is a motion by the defendant to dismiss the complaint on the ground that it fails on its face to state facts sufficient to constitute a cause of action (Rules Civ. Prac., rule 106, subd. 4). On such a motion, the allegations of relevant fact in the complaint are deemed to be true (Sutton v. Hearst Corp., 277 App. Div. 155, motion for leave to appeal denied 277 App. Div. 873; Goddard v. Gladstone, 4 Misc 2d 227, 229) and they are to be viewed most favorably to the pleader (Mesiano v. Mazzeo, 12 Misc 2d 858, 859; Russell v. Marboro Books, 18 Misc 2d 166, 183). However, even on a motion such as this, I am not to supply pertinent allegations needed to make the complaint sufficient.
The defendant contends that there is nothing in the complaint which states that the loss occurred “ On Premises” of the plaintiffs, which would bring it within the coverage of clause B of the policies in suit, and that even were the allegations otherwise in that respect, the loss is not covered because it appears from the face of the complaint that the loss was the result of a ‘ ‘ loan ’ ’, and is therefore excluded, or that it resulted from ‘ ‘ trading ’ ’, and is therefore excluded. In the view I take of this case, I shall limit my discussion to but one phase of one issue — the meaning and effect of clause B — headed “ On Premises ” — in the light of the allegations of this complaint. And, first, I shall state some applicable general principles of construction.
Where an insurance policy contains ambiguities they must be resolved against the insurer as the party who drafted the instrument (Fidelity & Cas. Co. v. Groth, 53 N. Y. S. 2d 623, affd. 270 App. Div. 976, affd. 296 N. Y. 788). The meaning to be given to a contract of insurance must be the meaning that the ordinary *552 businessman would give it (D’Agostino Excavators v. Globe Ind. Co., 7 A D 2d 483; Morgan v. Greater N. Y. Taxpayers Mut. Ins. Assn., 305 N. Y. 243). The “ burden [is] on the defendant to establish that the words and expressions used not only are susceptible of [a] construction [favorable to the defendant] but that it is the only construction that can fairly be placed thereon. The argument cannot successfully be made that the words used [here] are free from ambiguity ” (Hartol Prods. Corp. v. Prudential Ins. Co., 290 N. Y. 44, 49, motion for reargument denied 290 N. Y. 744). And, if so, the defendant is not entitled to a construction in its favor on the present motion any more' than it would on a motion to dismiss the complaint by way of summary judgment (see Utica Carting Stor. & Contr. Co. v. World Fire & Marine Ins. Co., 277 App. Div. 483; Dowdle v. Richards, 2 A D 2d 486). But the “ court is [of course] bound by the unambiguous language of the contract voluntarily entered into between the parties ” (Kimmel v. United States Fid. & Guar. Co., 165 Misc. 907, 908).
The defendant argues that the fraudulent scheme was conceived and consummated in Canada, and not in New York at the plaintiffs’ offices, and that therefore there was not insurance coverage. I hold that, on the facts as pleaded, the loss was occasioned to the plaintiffs on their premises. True, the plot was conceived in Toronto. Gestation, too, was there. Gynecological attention by Gould was given to it in Toronto, as well, and also by way of long-distance communications with New York. But obstetrical results were effectuated in the plaintiffs’ premises in New York. In my view, the clause B here in question is not unlike that in issue in Federal Dep. Ins. Corp. v. Hartford Acc. & Ind. Co., 106 F. Supp. 602, affd. 204 F. 2d 933, and which was decided after trial. There, the court, while recognizing that there “ are terms [in clause B] that would indicate location is a consideration as to the property which is the subject of the loss ”, said that it was “ not in accord with the defendant that a fair construction of Clause B requires that the false representation be on the premises of the insured bank. As we read the clause there is no condition of place as to where the false representation be made ” (p. 604).
As I study the principal cases relied upon by the defendant, I do not find that they are authoritatively to the contrary on this issue. The defendant cites Kean v. Maryland Cas. Co. (221 App. Div. 184, affd. 248 N. Y. 534) where recovery was denied the insured. While it is true that one reason for the court’s determination was that the loss occurred off the premises, I am of the opinion, in agreement with the plaintiffs, that this case is *553 at best a doubtful precedent here because of the differences in language of the policies and the differences of fact in the transactions involved. I shall point out the first. In paragraph B of the Kean policy, the various hazards for which protection was obtained are listed as including “ robbery, larceny (whether common law or statutory), burglary, theft, hold-up, misplacement or destruction.” The bonds in the present case, on the other hand, list all of these hazards and, in addition, they cover loss from 11 other fraudulent means * * *, abstraction or removal from the possession, custody or control of the Insured”. It seems to me, from a comparison of the wording of the two policies, that the bonds here sued upon were intended to give the insured a greater scope of protection than did the agreements in the Kean case.
Insofar as the case of Degener v. Hartford Acc. & Ind. Co. (92 F. 2d 959) is concerned, I do not go along with the majority of the court if its holding is to be taken to mean that (as a matter of law, and on the pleadings) the abstraction by Gould on the plaintiffs’ premises by fraudulent means of a valid and valuable check from the plaintiffs is not covered by clause B because the loss of the plaintiffs ’ ‘ ‘ property ’ ’ occurred only when the check cleared the plaintiffs’ bank. In the case at bar, the property which was the subject of the loss was the valuable checks that the plaintiffs delivered at their premises in exchange for the comparatively worthless Cabanga stock received by them. Thus were the moneys abstracted from them. The scheme by Gould to consummate that result was nonetheless larcenous or fraudulent because it was devious. A “ simple plot” is an oft-used literary juxtaposition but these words are not, as a matter of law, necessarily required to describe a fraud coming within the somewhat complicated language used by the defendant in issuing a “ Blanket Bond ” intended to assure these stockbrokers that they were protected against, among other things, “ [a]ny loss of Property through * * * statutory larceny * * * or other fraudulent means * * * or abstraction * * * from the possession, custody or control of the Insured * * * while the property is (or is supposed to be) lodged or deposited within any offices or premises located anywhere ’ ’. I hold that it is a question for the jury to determine whether, under all the facts, the loss sued upon here comes within the coverage of the clause involved here.
That is to say, that I hold that there would be such a question (as to the meaning and effect of clause B) had I not made an assumption at the outset of my statement of facts. For, on that hypothesis, I could not say that there are lacking in this com *554 plaint sufficient allegations of fact from which a valid cause of action can be fairly gathered from all the averments (Condon v. Associated Hosp. Serv., 287 N. Y. 411). But I must now come back to the assumption — that, as asserted by the plaintiffs’ counsel in argument, the plaintiffs had delivered their checks at their offices in exchange for the Cabanga stock then and there received by them from Gould. Since the plaintiffs rely upon clause B of the bonds sued upon, such an allegation, in my view, is material, and its absence would make the complaint inadequate. I find that there is no such specific allegation in this complaint, nor any basis upon which I may infer that fact. Nor can I rely upon the claim by the plaintiffs that local trade usage in New York City governs the matter since — even assuming (in view of the address of the plaintiffs given in the policies) that the insured’s offices involved in this affair were those in New York — no such local usage is pleaded and none is so generally known, uniform or well settled as to warrant my taking judicial notice thereof (cf. Walls v. Bailey, 49 N. Y. 464, 468). Moreover, and important, there is no allegation that the transaction, eoncededly conceived in Toronto, was consummated in the City of New York in conformance with such local usage.
In the circumstances, the defendant’s motion to dismiss the complaint must be, and is, granted, but the plaintiffs may have 20 days after the service of a copy of the order hereon with notice of entry within which to serve an amended complaint.