If properly enforced this act will have a wholesome effect in preventing frivolous appeals that are too frequently "sued out merely for delay." The rule is therefore made absolute and penalty awarded as provided by the act.

---

# Thomas Taylor, Appellant, *v.* The Union Traction Company.

*Bicycle law—Rule of the road—Negligence—Contributory negligence—Street railways—Act of April* 23, 1889—*City ordinance.*

Notwithstanding the Act of April 23, 1889, P. L. 44, which gives to riders of bicycles the same rights as persons using carriages drawn by horses, and a city ordinance which gives vehicles on passenger railways going in the direction that the cars travel, the right to the track when they meet vehicles going in the opposite direction, if a bicycler, while riding between the tracks of a street railway in the direction that the cars run, meet a wagon approaching him on the tracks from the opposite direction, it is his duty to leave the tracks, and if he fails to do so, and is run down by the wagon, he is guilty of contributory negligence, and cannot recover damages for his injuries from the owner of the wagon.

Argued Jan. 26, 1898. Appeal No. 334, Jan. Term, 1897, by plaintiff, from judgment of C. P. No. 4, Phila. Co., March Term, 1890, No. 444, on verdict for defendant. Before STERRETT, C. J., WILLIAMS, McCOLLUM, MITCHELL and FELL, JJ. Affirmed.

Trespass for personal injuries. Before WILLSON, J.

At the trial it appeared that on the evening of March 19, 1896, plaintiff was injured by one of defendant's wagons while he was riding a bicycle.

Under the instructions of the court, the jury returned a verdict for the defendant.

The facts appear by the opinion of the court below, WILLSON, J., discharging a rule for a new trial as follows:

This case arose in the following manner: The plaintiff was riding his bicycle on his way home from his work. He rode

down Broad street and turned eastward into Dauphin street.
While he was on his course rain fell, making the streets wet,
and requiring, as the plaintiff said, some care on his part in
order to avoid the slipping of his vehicle. He rode down
Dauphin street slowly; before he reached Thirteenth street he
saw a cart drawn by a single horse on its way up Dauphin
street. The plaintiff testified that he saw the driver of the
cart coming ; that he was not going to make any turn, and that
the man was driving very fast. According to the plaintiff's
testimony, he first saw the cart when it was thirty or forty feet
distant. The cart was occupying the tracks of the passenger
railway company ; the plaintiff kept on his course and so did
the driver, each evidently claiming or acting upon the theory
that he had the right of way. When it was too late for the
plaintiff to· do it safely he turned off; the plaintiff on his bi-
cycle was struck by either the cart or the horse, and he was
thrown and injured. The cart belonged to the defendant com-
pany and the driver was in their employ. The plaintiff now
seeks to recover damages for his injuries. In the statement of
the facts of the case it is also to be added, that the street cars
which run upon the tracks on Dauphin street run eastwardly,
that is, in the same direction as the plaintiff was riding his
bicycle. There may be said to be two grounds upon which the
plaintiff bases his cause of action. The first of these is that
the defendant's driver was driving at a high rate of speed. I
do not think there is anything in the evidence which would
justify an inference that the plaintiff's injuries were owing to
any negligence of the driver upon that course. The other
ground is that the plaintiff had the right of way. To sustain
this point, reliance is had upon the statute which gives to a
bicycle the character of a vehicle, and also to an ordinance of
the city which, in .ordinary cases, gives to vehicles the right of
way upon the tracks of the passenger railway companies in the
direction in which the cars ordinarily run. The obvious rea-
son of this ordinance, however, is that it was intended to give
to the vehicles making use of the rails of the tracks a conve-
nient and settled right of direction and occupancy upon those
rails. I do not think it has any bearing whatever upon the
rights of riders of bicycles. Nobody, I presume, would dispute
the proposition that in the ordinary occupancy of streets, and

under ordinary circumstances, the drivers of vehicles drawn by horses and the riders of bicycles must regard the ordinary rules of the road for each other's convenience and safety. I do not, however, think that such a rule would require that in an open unobstructed highway, a vehicle, like a cart, for instance, should be driven to one side in order that the rider of a bicycle might be relieved of the necessity of deviating from a straight line. Good sense and a reasonable regard for the peculiarites of such cases ought to be required, both of the drivers of vehicles and of the riders of bicycles. This is hardly necessary to say. The experience of almost everyone, in his own family, if not from his own personal use of the bicycle, emphasizes the importance of proper and reasonable regulations for the protection of the many thousands of people who use the modern vehicle known as the bicycle. At the same time, it is also to be borne in mind that that vehicle is much lighter and more under the control of its rider than vehicles of the other sort, which are drawn by horses.

In many cases, therefore, it is the duty of the rider of the bicycle to regulate his course and to make concessions, which possibly the driver of a vehicle of burden ordinarily would not be obliged to do. In this particular case it is quite evident that the plaintiff, under the notion that he had a right to compel the driver of the cart to leave the track in order to give him a free and unobstructed passage, remained in his onward course so long that the collision which occurred was unavoidable. In this he was at fault; he brought the consequences upon himself by his own folly. In our judgment, there was nothing in the circumstances of the case or in his duty which required the driver of the cart to leave the track to make room for the plaintiff. We are, therefore, of the opinion that the plaintiff made out no case, and that the instruction of the trial judge to the jury to render a verdict in favor of the defendant was proper and should be sustained. The rule is therefore discharged.

Judgment was entered upon the verdict.

*Error assigned* was in giving binding instructions, for defendant.

*Thomas Earle White,* for appellant.—A bicycle is a vehicle,

and as such has the rights of a vehicle : Act of April 23, 1889;
Geiger v. Turnpike Co., 167 Pa. 582 ; Com. v. Forrest, 170 Pa. 40.

*Thomas Leaming,* for appellee, was not heard, but argued in
his printed brief : A lighter vehicle or boat must give way for
the heavier and more unwieldy one : Beach v. Parmeter, 23
Pa. 196 ; Grier v. Sampson, 27 Pa. 183 ; P. & R. R. R. Co. v.
Adams, 89 Pa. 31.

PER CURIAM, January 26, 1898.
Judgment affirmed at bar.

---

## D. L. Stern, Trustee, *v.* William Stanton, Ellen I. Stanton and Joseph Weber, Appellants.

*Replevin—Sheriff's vendee—Distress—Landlord and tenant—Evidence.*

In an action of replevin by the sheriff's vendee for goods which, before
their removal from the premises where they had been sold, were distrained
for a quarter's rent which matured between the time of the levy and the
sale, one of the questions in dispute was whether the goods could have
been removed in the ordinary course of business before the distraint, and
another was whether there was a demise to the plaintiff after the sheriff's
sale. *Held*, that evidence as to the dimensions and contents of the build-
ings and as to whether plaintiff had offered to pay rent for the time dur-
ing which he had occupied the premises was relevant.

*Sheriff's sale—Removal of goods—Reasonable time—Landlord and tenant.*

A sheriff's vendee of goods stored in a leased building has a reasonable
time in which to remove the goods after the sale. Such time is not the
shortest possible time in which they could be removed, but the time required
to move them with diligence in the ordinary and usual manner of moving
such goods. An extraordinary case, like a hurried removal of goods from
a building on fire, furnishes no measure of the reasonable time required
for the removal of such goods.

In an action by a sheriff's vendee to recover goods distrained after the
sale, it appeared that the goods were turned over by the sheriff to the
plaintiff on a Saturday evening, and were distrained on the following
Thursday morning. Plaintiff testified that he was busy on Monday in pick-
ing out and delivering goods bought by other parties, and that he spent all
of Tuesday in looking for a place to store the goods purchased by him. He
also testified, but in this he was contradicted, that on Wednesday defendant