J. EARL BETHEL, an Infant, by next friend, JAMES G. BETHEL, Respondent, v. CITY OF ST. JOSEPH, Appellant.

Kansas City Court of Appeals, November 23, 1914.

NEGLIGENCE: Defective Street: Injury to Bicycle Rider: Duty of City. A city is not required to keep its streets in any smoother or better condition for bicycle travel than for other modes. A bicycle is a lawful vehicle and as such its rider is entitled to use the street. But while the city is bound to exercise ordinary care to keep its streets reasonably safe for travel in any general and usual mode including that of bicycles, yet it is not liable for a failure to make special provisions required only for the safety and convenience of persons using bicycles.

Appeal from Buchanan Circuit Court.—*Hon. C. H. Mayer,* Judge.

REVERSED AND REMANDED.

*Frank B. Fulkerson, L. E. Thompson* and *Herman Hess* for appellant.

(1) Plaintiff's instruction number 4 should have been refused, because including an instruction as to the

law regarding future injuries when the evidence does not show that there is any reasonable certainty of any such injuries. Wilkerson v. Met. St. Ry. Co., 126 Mo. App. 617; Ballard v. Kansas City, 110 Mo. App. 396; Klass v. Street Railway, 169 Mo. App. 617; Allen v. Lumber Co., 171 Mo. App. 492. (2) The instruction does not limit future pain and mental anguish to that shown by the evidence. Albin v. Railroad, 103 Mo. App. 308; Wilkerson v. Met. St. Ry. Co., 126 Mo. App. 613. (3) The refusal of defendant's instruction "A" was error. McQuellan on Munic. Corp., sec. 2759; 2 Dillon Munic. Corp. (4 Ed.), sec. 1019; 1 Shearman & Redfield on Negligence (5 Ed.), sec. 367.

*Duvall & Boyd* for respondent.

(1) Plaintiff's instruction number 3 correctly declared the law and was properly given by the trial court. Molway v. City of Chicago, 239 Ill. 486, 88 N. E. 485, 23 L. R. A. (N. S.) 543; Powers v. City of Boston, 154 Mass. 60; 27 N. E. 995; City of Americus v. Johnson, 2 Ga. A. 378, 58 S. E. 518. (2) A municipal corporation does not fulfill its duty to the public in making its highways safe for the use of horse drawn vehicles, if they are not safe for travel, including their use by bicyclists. Molway v. City of Chicago, 239 Ill. 486, 86 N. E. 485, 23 L. R. A. (N. S.) 543; Powers v. City of Boston, 154 Mass. 60, 27 N. E. 995. (3) Defendant's instruction "A" was properly refused. Defendant had no right to ask the court to make a comparison between the different kinds of vehicles, the duty being imposed upon defendant city by law to use ordinary care to keep its streets in a reasonably safe condition for travel by any more which the public has a right to use. Molway v. City of Chicago, 239 Ill. 486, 88 N. E. 485, 23 L. R. A. (N. S.) 543; Powers v. City of Boston, 154 Mass. 60, 27 N. E. 995.

TRIMBLE, J.—Plaintiff, a boy about sixteen years of age, was engaged in carrying parcels from a store to its various customers throughout the city of St. Joseph. He did this on a bicycle.

On the 29th day of October, 1913, between six and seven in the evening he was going east on Felix street when his wheel ran into a defect in the street throwing him to the ground and injuring him. By his next friend he brought this suit to recover damages.

It is first contended that the city's demurrer to the evidence should have been sustained and the case taken from the jury. But this is clearly without merit. It was not dark, though dusk had fallen, so that while plaintiff could see to go, yet the hole in the pavement could not be seen and there was no lights to disclose or call attention to the defect. The boy did not know of the defect in the street and was not shown to have been going in a careless manner or at a reckless speed. The defect in the street consisted of a sunken place about three feet across and from four to six inches in depth (One witness testified to four and three-eighths inches by actual measurement). Defendant's witnesses say it was a mere depression and of much less depth. It had been allowed to remain in that condition for at least five years prior to the injury. The defect was shown to have caused the fall and injury. Hence, there was undoubtedly a case for the jury.

Plaintiff's instruction number 4 is objected to because, in giving the measure of damages, it authorized the jury to take into consideration pain and anguish likely to be suffered in the future, if any. But this objection is also without merit. The instruction is in an approved form and the petition not only pleaded future pain and suffering, but there was sufficient evidence from which the jury could find that such suffering would reasonably follow. The injury was to the head, and the testimony was that such injuries

are slow of recovery and that at the time of the trial the plaintiff's head still hurt him and other unfavorable conditions resulting from the fall were still present.

Plaintiff's instruction number 3 which submitted the issuable facts upon which recovery depended, in submitting the question whether the defect rendered the street dangerous or not, did so in these words "if you further believe and find from the evidence that said hole or indentation in the pavement rendered said Felix street and said Twenty-first street at said point dangerous and not reasonably safe for persons travelling in or on vehicles *or on bicycles* upon, along or over said streets, etc." This told the jury that plaintiff could recover if the street was not reasonably safe *either* for ordinary vehicles *or* for bicycles. The city contended that this authorized the jury to find for plaintiff if they found that the street was dangerous to a bicycle although they might believe that it was otherwise reasonably safe for travel in general. In other words, the city says that the jury might well infer from that instruction that the city must not only exercise ordinary care to see that its streets were reasonably safe for general traffic but must also keep them reasonably free from such dangers as are peculiar to and liable to affect bicycles only. To prevent the jury from entertaining this idea, the city asked its instruction lettered A to the effect that "the city owes no greater duty to those riding bicycles upon its streets than it does to persons who may be passing along and over the same in another kind of vehicle" and that if the street was "in such state of repair as to make it reasonably safe for those passing along and over the same in vehicles usually used by persons travelling thereon while they themselves were using ordinary care in so doing, then the verdict should be for the defendant city." This instruction A was refused and its refusal is excepted to as error.

The point raised involves the principles to be observed in submitting to a jury the question whether a cyclist, under a given set of circumstances, can or cannot hold the city liable for a defect in the street. Must the city be required to keep its streets in any smoother or better condition for bicycle travel than for other modes? A small crack in the pavement, a sharp stone, a tack, a bit of glass, a piece of coal or an insignificant slant in the street might be highly dangerous to a bicycle rider, but would not affect other modes of travel. It will not do to require the city to keep its streets in the smooth condition of a driving or racing track for bicycles. On the other hand, it may perhaps be too strict a rule to enunciate the principle that a cyclist, under all circumstances, must take the road as he finds it and thus become the insurer of his own safety. A bicycle is a vehicle and as such is entitled to use the street. [North Chicago, etc. R. Co. v. Cossar, 203 Ill. 608; Holland v. Bartch, 120 Ind. 46; Lee v. City of Port Huron, 128 Mich. 533; Thompson v. Dodge, 58 Minn. 555; Taylor v. Union Traction Co., 184 Pa. 465.] Being entitled to use the street, does the fact that it is a fragile machine of unstable equilibrium increase or lessen the obligation of the city with regard to its streets, or does that obligation remain the same as in other modes of travel? We think the obligation remains the same. The object to be secured in requiring the city to care for its streets ''is the reasonable safety of travellers, considering the amount and kind of travel which may fairly be expected on the particular street.'' [Kelsey v. Glover, 15 Vt. 708.] The extent of the city's duty is to use ordinary care to keep its streets safe and convenient for ordinary travel. [2 Sherm. & Red. on Neg. (6 Ed.), sec. 367.] And while it might seem that since a city must use ordinary care to keep its streets reasonably safe for ordinary travel and since a bicycle has become a well recognized and usual mode of travel, this would add

to the burden of the city the duty of keeping the street free from things dangerous to bicycles alone, yet this does not follow by any means. The standard of care required is no higher. For while defects which would be harmless to other modes of travel are often exceedingly dangerous to a bicycle, yet, on the other hand, the bicycle occupies a much less space than other vehicles and can be turned in any direction much more easily. So that the apparent necessity for an increase of care caused by the increased danger to bicycles from defects otherwise harmless is fully balanced by the known ability of the bicycle to avoid them. The city ought not to be required to provide a roadway which would be safe for a vehicle the construction of which renders it peculiarly susceptible to injury when a comparison of it with other vehicles shows that, owing to its compactness and mobility, it can much more easily avoid a dangerous place than can other vehicles. [Note to 47 L. R. A. 289.] A city is not bound to use reasonable care to keep its streets in reasonably safe condition with a special view to bicycles, but to keep them reasonably safe for travel in any general and usual mode, which, however, includes the use of bicycles. [Molway v. City of Chicago, 239 Ill. 486.] That is to say, if the streets of cities and towns "are reasonably safe and convenient for travel generally, they are not liable for a failure to make special provisions required only for the safety and convenience of persons using bicycles." [Molway v. Chicago, 239 Ill. l. c. 489, citing Doherty v. Inhabitants of Ayer, 197 Mass. 241, 83 N. E. 677.]

Now if, under the instruction number 3 submitted by plaintiff, the jury were liable to understand that the street must be kept reasonably safe with a special view to bicycles, then defendant's instruction "A" should have been given, since it would have tended at least to correct that view and give the jury to understand that the duty resting upon the city was not to

maintain a street specially suitable for bicycles but that its duty was only to use ordinary care to maintain its streets in a reasonably safe condition for general traffic in all the usual and ordinary modes of travel. It is true an instruction should not make a comparison between the different vehicles lawfully used by travellers on the streets, but we do not think instruction "A" does this. It merely tells the jury that the city does not have to maintain a better street for bicycles than it does for vehicles in general, and that if the street was reasonably safe for vehicles in general and ordinary use, then the city had performed its duty. In Bills v. Salt Lake City, 37 Utah, 507, l. c. 514, it was held that an instruction which told the jury that the city owed no greater duty to one riding a bicycle to maintain its streets in a reasonably safe condition for travel thereon than to other travellers using other vehicles, was not a discrimination against the bicycle rider. The court remarked that it was true enough that comparisons should not be made between travelers, and that the true test is whether or not the city has used ordinary care to maintain its streets in a reasonably safe condition for travel whether in one kind of a vehicle or another. In 6 McQuillin on Munic. Corp., sec. 2759, it is said: "The rules applying to bicycles and tricycles ridden on a street or sidewalk is that the rider cannot recover for injuries resulting from defects in the street or sidewalk if it was in proper condition for pedestrians (in case of a sidewalk) or ordinary vehicles (in case of the driveway)." In 2 Elliott on Roads and Streets (3 Ed.), sec. 1119, it is said that some of the courts have held that a cyclist must take the street as he finds it, if it is reasonably safe and in a fit condition for ordinary vehicles, such as wagons and carriages and that there is no liability for injuries to users of bicycles caused by reason of the way not being safe for them so long as the street is reasonably safe for ordinary

travel with horses and wagons and carriages. [Citing Leslie v. City of Grand Rapids, 120 Mich. 28; Richardson v. Danvers, 176 Mass. 413.] But the author, near the close of the section, says the true rule is that cities and towns are bound to keep their ways reasonably safe and convenient for travel generally including that properly undertaken upon such vehicles as bicycles. But if their streets are reasonably safe and convenient for travel generally, they are not liable for a failure to make *special provisions* required only for the safety and convenience of those using bicycles, citing Doherty v. Town of Ayer, supra, and Molway v. City of Chicago, supra. As plaintiff's instruction number 3 did not define the city's duty as being merely to maintain the street in a reasonably safe condition for travel in general by means of all usual and ordinary vehicles and not to make special provisions required only for the safety of those using bicycles, we think defendant's instruction ''A'' should have been given. In this way the jury would clearly understand the extent of the duty resting upon the city and would not be liable to think that because the vehicle was a bicycle therefore a greater degree of care had to be exercised than if it had been some other. Plaintiff's instruction told the jury, without qualification, that if the street was not reasonably safe for persons travelling on bicycles then the city failed in its duty. But they should also have been told that this did not mean that the city had to guard against defects which would be dangerous only to bicycles and not to other methods of travel. This, defendant's instruction sought to do, and for that reason it should not have been refused. There was considerable difference between the plaintiff's and the city's idea of the extent of the defect. According to the former it was one dangerous to any mode of travel, while according to the latter it was not a hole but a mere slight depression in the brick pave-

ment which might not be considered a danger to traffic in general at all.

The judgment is reversed and the cause is remanded.  All concur.