**Lorraine A. DePUNG, Plaintiff-Respondent,**

**v.**

**CITY OF ST. LOUIS, Defendant-Appellant.**

**No. 32858.**

St. Louis Court of Appeals.

Missouri.

Feb. 20, 1968.

Thomas F. McGuire, City Counselor, John J. Fitzgibbon, Assoc. City Counselor, St. Louis, for defendant-appellant.

Robert A. Cedarburg, Derrick & Holderle and Tyree C. Derrick, St. Louis, for plaintiff-respondent.

CLEMENS, Commissioner.

The plaintiff motorist, Mrs. Lorraine A. DePung, was injured when she drove off the street and into a tree while trying to dodge

a partly lighted barricade and excavation in the defendant City's street. She got a $2,000 verdict and judgment. The City has appealed, challenging the sufficiency of plaintiff's evidence to show that the City had constructive knowledge of the dangerous condition long enough to impute negligence to the City in failing to remedy the condition.

The parties are in accord about the underlying principles of the City's liability. Neither questions the principle that a city is not an insurer for the safety of persons using its streets and is liable only for failing to use ordinary care to keep streets in a reasonably safe condition. (Keen v. City of St. Louis, Mo.App., 189 S.W.2d 139 [5].) Nor do the parties question the principle that it was incumbent on plaintiff to prove the dangerous condition existed long enough to warrant an inference that the City should have known of it and thereafter had time, in the exercise of ordinary care, to remedy it. (Glenn v. City of Springfield—Mo., 254 S.W.2d 632 [4].) As will be seen, plaintiff assumed that burden by her verdict-directing instruction. The parties differ, however, about the amount of time that was in fact available to the City before the accident to discover and remedy the dangerous condition. We conclude that the time available was approximately half an hour and we recite the verdict-consistent evidence on which we base that conclusion.

Bates Street runs east from Grand Avenue through a residential neighborhood. It is 31 feet wide, straight, level and flanked by trees and dim street lights. Several months before Mrs. DePung's accident the City had repaved Bates Street with a layer of asphalt. The Metropolitan Sewer District (MSD) maintained a sewer under the center of the street, and manholes gave access to the sewer. In repaving Bates the City had intentionally covered these manholes and then spotted each one for MSD. In due time MSD uncovered the manholes and raised them to the new grade by pouring fresh concrete around each one. Then the manholes were barricaded and lighted by MSD for several days while the concrete hardened. City street supervisors inspected MSD's work from time to time, and the City was to repave around the manholes when MSD was finished with its work. Mrs. DePung was injured during MSD's phase of the work. So much for the general conditions.

Mrs. DePung gave a precise account of the accident. At 10:30 p. m. she was driving east on the south side of Bates Street. This was the first time she had driven on Bates. Parked cars lined both sides of the street. Mrs. DePung's headlights lit the street for about 100 feet ahead. Two hundred feet ahead of her, Mrs. DePung saw a flickering red light on the *north* side of Bates (on her left-hand side) and thought someone was working on that side of the street. When 20 to 30 feet away, Mrs. DePung saw the excavation and barricade in the center of Bates. Trying to avoid this, she braked and swerved to her right. Although she missed the barricade, her car ran over the curb and into a tree on the south side of the street. The barricade straddled the manhole, in the center of the street. It was 3 feet high and 7 feet long, made of unpainted, weathered wood. Its dull color blended with the gray-black asphalt pavement and a pile of dirt lying beyond the barricade. A red lantern hung from each end of the barricade. The lantern at the north end was dim and flickering; the lantern at the south end (Mrs. DePung's right-hand side of the street) was unlit.

The evidence on the time element: Two residents on Bates Street testified for plaintiff. Each confirmed her statement that only one lantern was burning on the barricade at the time of the accident, but they differed about which one was lighted. Mrs. Virginia Humann had looked out to the street "half an hour to an hour, perhaps" before the accident. She saw only one lighted lantern on the barricade; she was positive of this but vague about the location of the

barricade with reference to the center of Bates Street. At that time Mrs. Humann thought the one lighted lantern was on the *south* side of the street. (On cross-examination she stated definitely that the lighted lantern was on the south side of the street.) The other resident, Mrs. Mabel Buchrucker, said that MSD workmen had worked at each manhole two or three days; that they put up barricades and lanterns at night; that on the night before the accident four lighted lanterns hung from the barricade. On the night of the accident Mrs. Buchrucker was listening to a news broadcast between 10 and 10:30 o'clock. Some time during the broadcast she heard motorists on Bates Street "putting on their brakes as though they were making quick stops." Curious, she went to the window, looked outside and saw that the barricade had only one lighted lantern—on the north side (Mrs. DePung's version). Mrs. Buchrucker started for her phone to report the condition to the police, and on the way she heard Mrs. DePung's car hit the tree. Both Mrs. Buchrucker and Mrs. DePung's husband (who came to the scene a few minutes later) said a policeman lighted the south lantern after the collision.

■ The sufficiency of this evidence must be measured according to plaintiff's submission. (Guthrie v. City of St. Charles, 347 Mo. 1175, 152 S.W.2d 91 [4, 5].) Here is her verdict-directing instruction:

"Your verdict must be for the plaintiff if you believe:

"First, defendant permitted to be maintained a barricade on Bates Avenue at night without sufficient lights thereon to warn motorists of its existence, and

"Second, persons driving along said street exercising the highest degree of care were exposed to danger, and

"Third, defendant knew or by using ordinary care should have known of said danger, and

"Fourth, defendant failed to use ordinary care to remedy it, and

"Fifth, as a direct result of such failure, plaintiff was injured, unless you believe plaintiff is not entitled to recover by reason of Instruction No. 4."

The City challenges the sufficiency of the evidence to meet the third paragraph: the City's constructive knowledge of the dangerous condition. The plaintiff and the City give opposite interpretations of the plaintiff's evidence. Plaintiff contends there was no evidence that the south end of the barricade was ever lighted. The City, relying on Mrs. Humann's statement that it was the *south* lantern that was burning before the accident, contends there was no evidence that the south light was out until the moment Mrs. DePung drove up. Plaintiff and defendant cite cases based on these extreme versions. We believe the plaintiff's evidence warrants neither extreme view but lies between.

■ We conclude that the substantial evidence is that the lantern on the south side of the barricade was unlit for not more than half an hour before the accident. This time is calculated on the testimony of two witnesses: Mrs. Humann said that "half an hour to an hour, perhaps" before the accident only one lantern was burning, but she said it was the south lantern. And Mrs. Buchrucker said that while listening to the ten o'clock news she heard cars making quick stops (an inference that for this half-hour period one of the lanterns was unlit); that a moment before the accident—about 10:30—she looked outside and saw that the north lantern was lit and the south lantern was unlit.

■ This view of the evidence brings us to the crucial question of law: Was the City negligent by failing, for thirty minutes, to discover and remedy the dangerous condition caused by the unlighted lantern on the south side of the barricade? We say no.

■ The circumstances surrounding a discoverable, dangerous defect may warrant an inference of municipal negligence by failure to discover and remedy the danger. But in Irwin v. Kansas City, 173 Mo.App. 711, 160 S.W. 30 [5], the court said: "No fixed rule can be established as to the exact length of time a defect must have continued to justify the presumption of knowledge in time to have remedied it before the injury occurred, but each case will depend on the facts peculiar to it. Such period would necessarily vary and depend on the conspicuity of the defect and the amount of travel upon or extent to which the street is used." See, also, Peterson v. Kansas City, 324 Mo. 454, 23 S.W.2d 1045 [7], and Beauvais v. City of St. Louis, 169 Mo. 500, 69 S.W. 1043, l. c., 1044.

■ Determination of the ultimate fact of municipal negligence rests primarily with the jury, but this determination does not escape judicial scrutiny. Thus, it was said in Nimmo v. Perkinson Bros. Const. Co. (and the City of St. Louis), Mo., 85 S.W.2d 98 [4, 5]: "In a particular case the attending circumstances may be such, and the time shown to have elapsed, between the first existence of the defect and the occurrence of the injury, so long that the court may be warranted in imputing timely notice of the existence of the defect to the city as a matter of law. [Citing cases.] On the other hand, the circumstances may be such, and the time intervening between the occurrence of the defect and the happening of the injury so short, that the court may be justified in declaring as a matter of law that the city cannot be charged with timely notice of the existence of the defect. [Citing cases.] But in order that the court may be warranted in treating the issue of timely notice to the city as a matter of law, the uncontradicted evidence must be of such a clear and convincing character that only one conclusion can be fairly and rationally drawn from it." See, also, Irwin v. Kansas City, supra, and McQuillin's Municipal Corporations (1967), Vol. 19, § 54.113.

This question of whether the time and surrounding circumstances suffice to warrant a jury's imputing negligence to a municipality is not new to our courts. Four cases are based on closely comparable facts. Two upheld the jury's right to infer negligence; the other two held the court should have declared as a matter of law that the facts did not warrant an inference of negligence.

In Scanlan v. Kansas City, 223 Mo.App. 1203, 19 S.W.2d 522, the plaintiff walked into an iron band that had sprung loose from a utility pole adjoining a sidewalk in the heart of the downtown commercial district, within view of a city policeman. The band had been noticeably loose for several weeks before it broke. For almost four hours before the plaintiff was hurt, it stuck out into the sidewalk. In affirming the plaintiff's judgment the court said: "* * * we think that the jury could find that 3 hours and 45 minutes was sufficient time within which the city should have discovered and remedied the situation of the iron band in its bent and twisted condition." In Sutter v. Kansas City, 138 Mo.App. 105, 119 S.W. 1084, the plaintiff fell over bricks scattered by children at play on a city sidewalk. Although on the night plaintiff was injured the bricks had been on the sidewalk only one hour, on previous nights children had repeatedly scattered bricks on the sidewalk. The court held the question of sufficient notice to the city was properly submitted to the jury. Thus, in each of these cases the time available to the city to discover and remedy the defect was considerably longer than the 30-minute period here.

By contrast, in Lampert v. Laclede Gas-Light Co., 14 Mo.App. 376, 397, the plaintiff was injured by walking into a lamp post fifteen minutes after the time for lighting street lamps. In reversing plaintiff's judgment the court said: "* * * there remained an interval of but fifteen minutes between that time and the time

of the accident in which to attend to this duty. It ought not to have been left to the jury to say that this was a reasonable time. The court ought, as requested by the defendant, to have instructed the jury as matter of law, that it was not a reasonable time." Again, a plaintiff's judgment was reversed in Miller v. Kansas City, 157 Mo.App. 533, 137 S.W. 998. There the plaintiff was injured by a falling signboard that had been standing loose near the sidewalk for 15 to 30 minutes. On appeal it was held that the trial court should have declared as a matter of law that there was no constructive notice to the city. (The court cited out-of-state cases where the time of notice varied from a few minutes to an hour and the time had been held insufficient to infer constructive knowledge.) Thus, in these two cases, where the time element was comparable to ours, the facts were held inadequate, as a matter of law, to warrant an inference of municipal negligence.

As said in the Nimmo case, quoted above, there are judicial limitations upon the right of a jury to infer that a municipality was negligent in failing to promptly discover and remedy a dangerous condition. As said in McQuillin's Municipal Corporations (1967), Vol. 19 § 54.113: "But in determining how speedily a municipality should be required to act to avert accidents, 'a limit must some time be reached, where the period between discovery of the defect and the accident is so short that a jury should not be allowed to say, as a question of fact, that due diligence had been lacking.' "

(Quoting City of Portsmouth v. Houseman, 109 Va. 554, 65 S.E. 11.) We consider here that the dangerous condition had existed no more than half an hour, that the barricade was in a lightly traveled street in a residential neighborhood, and that the incident occurred at night, when most city employees would be off duty. Considering all this, we conclude that a limit has been reached when the jury should not be allowed to say that due diligence was lacking. To hold otherwise would be little short of making the City an insurer against all defects. The trial court should have granted the City's motion for a directed verdict.

It appearing that the factual issue of constructive knowledge was fully developed, there is no occasion for a new trial. Lance v. Van Winkle, 358 Mo. 143, 213 S.W.2d 401 [10, 11]. And this disposition of the case relieves us from considering the City's further contention that Mrs. DePung was contributorily negligent as a matter of law. The judgment will be reversed and the cause remanded, with directions to enter a new judgment for the defendant.

PER CURIAM:

The foregoing opinion of CLEMENS, C., is adopted as the opinion of this court. Accordingly, the judgment is reversed and the cause remanded, with directions to enter a new judgment for the defendant.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.