Alton M. CHAMBERS, Respondent,

v.

City of KANSAS CITY, Missouri, a Chartered Municipal Corporation, Appellant.

No. 54113.

Supreme Court of Missouri,
Division No. 1.

Oct. 13, 1969.

Motion for Rehearing or to Transfer to Court En Banc Denied Nov. 10, 1969.

Albert J. Yonke, Kansas City, for plaintiff-respondent.

Herbert C. Hoffman, City Counselor, Dan G. Jackson, III, City Counselor, Kansas City, for defendant-appellant.

HENRY I. EAGER, Special Commissioner.

This is a suit for personal injuries allegedly caused by the negligence of the City of Kansas City in permitting the existence of and failing to repair a hole in the street on Troost Avenue between 12th and 13th Streets. The injury occurred on May 9, 1960, somewhere around 8 a. m. Suit was filed on October 4, 1961. There is no explanation in the record to show why trial was delayed until April 22, 1968. The jury returned a verdict for plaintiff in the sum of $49,450.00, judgment was entered thereon, and defendant's after-trial motions were overruled. It then appealed.

Plaintiff was employed as a truck driver for Consolidated Food Company; he had been so engaged for that employer and a predecessor for approximately 18 years. It was his duty to drive to the different locations in and near Kansas City where deliveries of groceries in wholesale quantities were to be made. He apparently drove different trucks at different times. He did not load the trucks. On this day he was driving a 2-Ton Van Type Chevrolet truck with groceries loaded in different piles for separate deliveries, and as he said, "load-ed high and heavy" so as to be "top-heavy." Because of plaintiff's seniority he had some choice of routes and trucks; he had driven this truck about 2 weeks previously and had reported that its brakes grabbed; he testified that they had been repaired. On this morning, before he started from the warehouse in North Kansas City, he had checked the tires and tested the brakes by driving at a speed of ten miles an hour and trying them out; he said that they then worked perfectly. On the route from the warehouse to the place of this occurrence he made such stops as were made necessary by traffic lights and had no difficulty. He turned right (south) into Troost from 12th Street, after stopping for a red light, and proceeded at about 20 miles an hour. The street is not adequately described in the record, but there were two sets of streetcar rails, apparently unused, and a full traffic lane on each side of the rails. Plaintiff drove with his right wheels outside the westernmost rail and his left wheels between the southbound rails. There were no cars to his right; there was traffic moving ahead of him, about 4 car lengths distant, and considerable traffic coming towards him (north) with most of those cars "straddle the east car track." There was a traffic light at 13th Street, and in the course of traveling the block he saw children on the northwest corner of that intersection (on his right). He testified: that he was watching the light, the children, and the traffic coming toward him; that as he neared 13th Street he saw a hole in the pavement about 20 feet in front of his truck; that he applied the brakes as soon as he could, but that they did not take effect until his right front wheel had hit the hole. By photographs and testimony (the photos being taken by the Kansas City Police) the hole appears to have been a rather long, irregular rut, 3 feet or more long, probably 3 inches deep and about 10–11 inches wide at its widest places; plaintiff thought it was about 5 feet long. The west edge of the hole was most irregular, having the appearance of worn, eroded or weathered asphalt from the photographs. Plaintiff tes-

tified that he had not driven on that part of Troost within the past 6 months.

In any event, the right front wheel of plaintiff's truck struck the hole, his load of groceries "shifted" toward the right front corner of the truck, and he pulled the wheels to the left, but the wheel "didn't want to come out." We need not relate his testimony of all the other efforts and movements, but the truck, with the brakes on, swung over to the right, hit the curbing, turned over on its side, and threw the plaintiff out on the pavement; the truck landed on him and it is indicated that he was saved from even more serious injuries by the curbing. After considerable time he was extricated by firemen who jacked up the truck, after it had fallen back on him once when a jack slipped. Plaintiff testified that he had seen loads shift before in similar trucks when there was a quick jerk.

There is considerable controversy concerning the testimony of Ben Poisner, a registered engineer practicing his profession in Kansas City, Missouri. He was a graduate chemical engineer, but for 43 years had been engaged in various phases of engineering work, including the testing and inspection of paving materials; he was a member of various engineering organizations, some of which were concerned particularly with the testing of construction materials; he was and had long been the manager of "General Testing Laboratories" in Kansas City, principally concerned with testing the strength of construction materials. There can be no question about his qualification as an expert. He testified in substance: that for years he had tested materials used in the street surfaces in Kansas City, and had been familiar with the specifications or requirements of Kansas City for such materials; that the two principal surfacing materials used were Portland Cement concrete and asphaltic concrete, and he gave the component parts of each with the variations used; that the Portland Cement concrete is much tougher and stronger and lasts longer; that he had examined Exhibits 6A and 7A which were two photographs of the hole here in question; that the area immediately outside the streetcar rail (and up to the edge of the hole) was Portland Cement concrete and the remainder of the paving was asphaltic concrete; that he could form certain opinions from the photographs; that this hole was not cut by tools, but was formed by erosion due to the breaking down of the asphaltic concrete, which in turn was due to "weathering" and the deterioration caused by traffic; that the asphalt is softer and breaks down much more readily, but that he also saw evidence of wear on the edge of the Portland Cement concrete slab which takes "quite a little time"; that he did have an opinion as to how long the hole had been there and that from the appearance of the polished areas along the slab and the broken sections of the asphaltic concrete, it was his opinion that the hole had been there not less than 3 or 4 weeks. Defendant objected to such testimony on the ground that "no scientific result" could be obtained from the pictures according to Mr. Poisner's own testimony. This was overruled, the court noting that he was merely giving an expert opinion. The witness further testified on cross-examination that there was a tendency for the wheels of traffic to drop off of the slab and break down the asphalt. This witness had not seen the hole itself, for the trial came about 8 years after the accident.

Other photographs showed curved skid marks leading to the overturned truck, one starting at the hole. There was evidence from an officer in the traffic division of the police department: that at 20 miles an hour the truck would travel 29.4 feet per second and should be stopped in 44.5 feet plus reaction time; that in the reaction time of three fourths of a second it would travel approximately 22 feet; that the time for swerving would be somewhat less, perhaps a total of 38.6 feet.

We shall not relate the medical testimony in detail, for the defendant has made no point in its brief on excessiveness. There was very substantial medical testimony, and it is clear that plaintiff suffered

the following injuries and disabilities: his pelvis was fractured in two places on the right side; his collarbone (right) was fractured; two ribs were fractured; the urinary bladder was ruptured at the lower end (probably caused by the fracture of the pelvis) and the urethra was completely severed at a point a short distance from the exit from the bladder. These ruptures were discovered by sundry tests soon after plaintiff entered the hospital, when the leakage of urine into the tissues created a very serious condition. An operation was performed promptly, the bladder repaired, the urethra sewed together over a catheter and tubes inserted in the bladder for drainage. Plaintiff also developed phlebitis in both legs, from which he apparently recovered; he was fed intravenously and he was given 5 blood transfusions during his 30 or 31 days in the hospital. The injury to and operation on the urethra has left a scarring and constriction, with the result that about every three months he must undergo a dilation, performed by running instruments entirely up through the urethra and into the bladder. This condition is said to be permanent. Plaintiff had considerable arthritis of the spine which was said to have been aggravated by the injury. There was some evidence concerning a possible disc injury, but it was very vague and we need not consider it. Plaintiff testified that he still has trouble with his low back and with his shoulder more or less continuously, and with his legs much of the time; he went back to work about the last of September, 1960, first as a driver for the same employer with "lighter loads," and later for Isis Foods as an order filler in the warehouse; there he lifts groceries on to and off of a hand truck, and in addition, has charge of the "spice room," which is a lighter form of work. He actually receives more in pay than he did before his injury because of advances in the hourly union scale. He says, however, that he is continuously inconvenienced by his condition.

Defendant produced evidence to show that plaintiff had done his work satisfactorily since he returned to work. A mechanic in the police garage testified that the truck in question was brought into that garage shortly after the accident and that he pulled the front wheels, removed the brake drums and found that grease from the inner grease seal on the right wheel had leaked on to the lining; that such grease might or might not cause difficulty, such as a "grabbing," but that he did not attempt to drive the truck. A police officer who was at the accident scene testified that he talked with plaintiff while the latter was under the truck and that he told the officer that the brake had been grabbing and that he "had been trying to get them to fix the truck for two weeks"; also, that plaintiff did not say that the brakes grabbed that day, nor did he say anything about a hole. Plaintiff testified that he did not recall talking to that officer, and that he had not driven that truck for two weeks. We see no necessity for reviewing the pleadings. Such references as may be proper will be made later.

Appellant's points are, in substance: (1) that plaintiff failed to make a submissible case because (a) there was no evidence of "timely notice" of a defect, and no evidence that the street was not reasonably safe; (b) the court "erred in allowing" Mr. Poisner to testify as he did, such being speculation; and (c) that plaintiff was guilty of contributory negligence as a matter of law; (2) that the giving of plaintiff's Instruction No. 2 was error; and (3) that the argument of plaintiff's counsel to the jury should be considered as plain error and prejudicial. Plaintiff's counsel seeks to refute each and all of these points, and includes as an extensive affirmative point the contention that, even though the issue of excessiveness has not been preserved, the verdict is not excessive.

■ We first consider whether plaintiff made a submissible case. The points of no notice and no showing that the street was unreasonably safe may be considered along with the admissibility and effect of Mr. Poisner's testimony. It is a little difficult

to tell whether defendant is actually raising the point of the inadmissibility of that testimony or merely saying that it was speculative and therefore of no real substance. In any event we hold that the testimony was admissible, and this, despite the fact that the scope of the objection may have been inadequate. There can be no doubt that the witness was fully qualified and that he had been dealing almost constantly with paving and construction materials for many years, including the testing of them. The trial took place eight years after the injury and of course it would then have been impossible for any expert witness to examine the hole itself. Defendant's objection seems to be that Mr. Poisner could not legitimately testify to a "scientific result" from photographs; he very frankly admitted that such results are obtained only from tests, but that he could and had formed an expert opinion from the photographs. It seems obvious that from these clear and distinct pictures (taken by an agency of defendant at the time), an expert could readily distinguish the different materials and form an opinion as to the causation of the hole from its shape, contour, irregularity and appearance, including its worn-down outer (western) edge; and further, having determined the cause to be erosion and wear, that he could likewise form and state an opinion as to the minimum time it had been there. The witness could do these things with a knowledge based upon his experience whereas a lay juror could not. The evidence was admissible and it constituted substantial evidence that the hole had existed there for at least 3 or 4 weeks. Defendant has cited no case even approximately in point, and when we consider the wide discretion allowed to the trial courts in the admission and exclusion of expert testimony, the present contention of inadmissibility is wholly ineffective. We are also convinced that the evidence was substantial and not merely speculative.

Defendant does not really argue that a period of 3 to 4 weeks was not sufficient to constitute constructive notice of such a defect. We hold that it was sufficient to make a fact issue on the question; defendant's constructive knowledge was submitted in an instruction. In other cases evidence of the existence of defects in sidewalks for a much shorter time has been held sufficient for submissibility. Scanlan v. Kansas City, 223 Mo.App. 1203, 19 S.W. 2d 522; Peterson v. Kansas City, 324 Mo. 454; 23 S.W.2d 1045; and perhaps Sutter v. Kansas City, 138 Mo.App. 105, 119 S. W. 1084. There is a good review of the subject in DePung v. City of St. Louis, Mo.App., 425 S.W.2d 509. Defendant further says that it was not shown that this hole made the street not reasonably safe. That question is always one for the jury, unless the court can say that the defect is so trivial that all reasonable persons must agree. We cannot do so here. The hole was 3–5 feet long, 3 inches deep, 10–11 inches wide and irregular; it created a sort of *rut,* where the concrete joined the asphalt, outside the rails; the location was just where the right wheels of many vehicles might travel. Of course, as defendant says, the mere fact of injury does not support an inference of negligence, but that is not our situation. Most of our cases on this phase of the matter are sidewalk cases; four defective street or alley cases are cited by plaintiff, namely:—Young v. Kansas City P. S. Co., et al., Mo.App., 255 S. W.2d 113; Bethel v. City of St. Joseph, 184 Mo.App. 388, 171 S.W. 42; Rutherford v. City of Hannibal, Mo.App., 253 S.W. 26 and Smyth v. City of St. Joseph, Mo.App., 297 S.W.2d 578. Plaintiff has also cited several cases from other states involving street defects, which we need not discuss. On general principles of municipal liability the existence of such a defect as we have here (for a sufficient length of time) creates a fact question on negligence, that is to say, whether the street is thereby rendered unsafe. We so hold; the defect certainly cannot be said to have been a *trivial one, and it existed in a very heavily* traveled street. The question of "triviality" is discussed in Young, supra.

The point made on contributory negligence will not require extended discussion; of course there was a fact issue on the question and it was submitted. The evidence does not justify us in concluding as a matter of law that plaintiff was contributorily negligent. No cases are cited by defendant which would so indicate. It is true that failure to keep a vigilant lookout may be inferred. Cox v. Moore, Mo.App., 394 S.W.2d 65, cited by plaintiff; see also Welch v. Sheley, Mo., 443 S.W.2d 110. But the existence of that negligence depends upon all the conditions and circumstances present. Cox, supra; Moore v. Ready-Mixed Concrete Co., Mo., 329 S.W.2d 14. Consequently, we must refer again to the evidence. Plaintiff had just turned into Troost Avenue and had traveled less than a block; he was following other traffic at about 4-car lengths; seven or eight cars were coming toward him, traveling on the northbound car track; he saw children playing on the northwest corner of the next intersection (13th & Troost, on his right) and there was a traffic light there which he thought was about to change. Watching these things, he saw the hole at about 20 feet. Defendant says that he should have seen it sooner and swerved so as to miss it, using a calculation from a plaintiff's witness that one could swerve one foot at 20 miles an hour in perhaps 38.-6 feet; according to the same witness it would have taken plaintiff 66.5 feet to stop. Defendant argues that plaintiff should have seen the hole (which was said to be 75 feet from 13th Street) at *50* feet and swerved, presumably because he testified that he saw the children when 125 feet from the intersection or when he was in the middle of the block; thus it is argued that he *then* should also have seen the hole. The precise location from which he saw the children is not clear from his testimony. Assuming that he saw the children from 125 feet, any driver knows that seeing a hole in the street over the hood of a truck is ordinarily more difficult than seeing other traffic on the street or children on the sidewalk. And a driver is not required to look continuously in one direction or at one place. Bischoff v. Dodson, Mo.App., 405 S.W.2d 514. It is impossible to say as a matter of law that plaintiff should have seen the hole (and swerved) sooner than he did, despite counsel's calculations. See, generally, as holding a failure to see a vehicle or other object to be a question for the jury: Moore v. Ready-Mixed Concrete Co., Mo., 329 S.W.2d 14; Walker v. Massey, Mo.App., 417 S.W.2d 14; Tener v. Hill, Mo.App., 394 S.W.2d 425. Plaintiff here was watching, and required to watch, at least three things besides the pavment in front of him. Counsel argue also that plaintiff himself said, in answer to a question as to whether or not he could have swerved, that: "I guess I could have if I could have thought quick enough." The ability to swerve and miss the hole, on the testimony of the traffic expert, would still have depended upon seeing the hole sooner. No one claims on this evidence that plaintiff could have seen it at 20 feet, reacted, and swerved in time to miss it. Without further discussion we hold that there was no contributory negligence as a matter of law.

Plaintiff's Instruction No. 2 was as follows:

"Your verdict must be for plaintiff if you believe:

First, there was a hole in the street and as a result the street was not reasonably safe for the public, and

Second, defendant knew or by using ordinary care should have known of the existence of this condition, and

Third, defendant failed to use ordinary care to remedy it, and

Fourth, such negligence directly combined with the acts of Consolidated Food Company to cause injury to plaintiff unless you believe plaintiff is not entitled to recover by reason of Instruction No. 4.

MAI 22.04

19.01 Offered by plaintiff."

Defendant briefs these points as to that instruction: (1) that it failed to require a finding of negligence; (2) that it (and all other instructions) failed to define "negligence" as there used; and (3) that it went outside or "exceeded" the theory and allegations of the petition. The first two points would raise a serious question if properly preserved. Plaintiff says that they have not been so preserved, citing cases and our Rule 79.03, V.A.M.R. We note that the instruction, generally, follows the "Sidewalk Defect" MAI No. 22.04 except for paragraph "Fourth." That instruction does not use the word "negligence," but plaintiff here has added (as his "Fourth") the first suggested paragraph of MAI 19.01 on causation as to a joint tort-feasor. The latter instruction in its uses of the word "negligence" was evidently intended to be affixed to such instructions as MAI 17.01 and 17.02 (as indicated) where a finding of negligence has been required.

 We have searched defendant's motion for new trial and do not find that the first two objections now made to this instruction have been specified under the requirements of our Rule 79.03. Other assignments are made at some length, including Point (3) above and the assignment that the instruction is based upon no credible evidence. The nearest possible approach to assignments such as (1) and (2) above, was that paragraph "Fourth" of the instruction gave the jury a "roving commission" of such broad language as to permit a verdict without limiting the jury to any issue of fact or law. That is a far cry from a specification that the instruction did not require a finding of negligence or that the term "negligence" as used therein, should have been defined. We cannot enforce Rule 79.03 in cases generally and ignore it here. The first two points which plaintiff has briefed on this instruction have not been preserved, and we must presume that they were not presented to the trial court. The rule is strictly enforced and the sound reason for it is that all such objections should first be presented, at the trial

or in the motion for new trial, to the trial court. Miller v. Gulf, Mobile & Ohio Railroad Co., Mo., 386 S.W.2d 97; O'Brien v. City of St. Louis, Mo., 355 S.W. 2d 904. No objections to instructions were made at the trial. Our ruling should definitely not be understood as approving the instruction.

 Defendant's other point on the instruction has been adequately preserved, but we disallow it on the merits. The negligence pleaded in the petition was that: defendant negligently allowed, permitted and maintained the street at the location in question in such a state of disrepair that there was a large hole making the street dangerous for vehicles; that defendant knew or should have known of that condition; and that defendant should have warned plaintiff by barricades or otherwise; causation was also alleged. Instruction No. 2 is based upon defendant's alleged negligence in maintaining the street in that condition when it knew or should have known of this defect. It is true that the instruction abandoned the alleged negligence in failing to erect barricades or warn, but it cannot fairly be said that it was *outside* the issues of the pleadings. It simply did not incorporate all the assignments of the petition, and plaintiff may abandon one or more assignments in his submission. We may not hold Instruction No. 2 erroneous on this record.

 The last point made by defendant concerns the argument of plaintiff's counsel to the jury. Defendant says that a "mathematical formula" was urged for the computing of damages, in violation of the rule announced in Faught v. Washam, Mo., 329 S.W.2d 588. Defendant also asks us to apply our "Plain Error" Rule (79.04) since the appropriate objections were not made at the trial, although fully assigned in the motion for new trial. Under the present circumstances we shall not review the argument in full detail for, even if the "Plain Error" Rule should be considered applicable, defendant has made no point in

its brief on excessiveness of the verdict. There is a casual statement at the conclusion of the entire argument (after listing certain special damages) that: "Therefore, the total special damages are $6,885.20 and the verdict is excessive." This falls far short of our requirement concerning "Points Relied On", as expressed in Rule 83.05(e). The point should be clearly stated (as a "point"), the ruling stated, and the reasons stated to show why the trial court was wrong. Our courts have held rather distinctly that errors in argument or in certain features of the evidence which would only go to the amount of damages, will not be deemed prejudicial unless a point is made on excessiveness of the verdict. Davis v. City of Independence, Mo., 404 S.W.2d 718; Sparks v. Auslander, 353 Mo. 177, 182 S.W.2d 167; Bennett v. Kitchin, Mo., 400 S.W.2d 97; Bobos v. Krey Packing Co., 323 Mo. 224, 19 S.W.2d 630; Goldstein v. Fendelman, Mo., 336 S.W.2d 661 (discussed briefly later).

We would perhaps be derelict in our duty to the trial courts and the bar if we did not give here some explanation of the argument and our views of it. Counsel argued that 105 dilations of the urethra (past and future) would be worth $150 each, totaling $15,750.00, and he started to argue the value of plaintiff's pain for 8249 days (past and future),—at which point he was stopped and cautioned by the court. Nevertheless in further argument counsel argued without any interruption on two occasions that 8249 days of pain should be worth $49,449.00 (which was within one dollar of the amount of the verdict), and that 31 days of hospitalization should be valued at $100 per day, and he repeated the valuation of the dilations. We do not approve of that argument, and it is not justified under either Faught v. Washam, Mo., 329 S.W.2d 588, or Goldstein v. Fendelman, Mo., 336 S.W.2d 661, on the latter of which plaintiff seems to rely. The argument in that case was held to be non-prejudicial because the verdict of $20,000.00 was expressly found *not* to be excessive,

and Faught was distinguished largely on that basis. It is distinguished here because defendant has made no valid point of excessiveness. We also note, as was done in Goldstein, that there was substantial medical evidence for plaintiff which indicated serious and permanent injuries.

We find that no prejudicial error is presented on this record, and the judgment is therefore affirmed.

PER CURIAM:

The foregoing opinion by HENRY I. EAGER, Special Commissioner, is adopted as the opinion of the Court.

All of the Judges concur.